## BATTEN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 3, 1903.

1. **Damages: LOSS OF EARNINGS.** Loss of earnings as an element of damages, is properly submitted to the jury, where plaintiff testified that prior to the injury, she did necessary work as a boarding-house keeper, that after such injury she was unable to do any such work and was compelled to hire others to do it at a certain sum each week.

2. ———: **MENTAL ANGUISH.** Mental anguish may be produced without disfigurement of the body. It is produced by extreme pain of body or mind, and may be presumed to exist where the nature, character and extent of the injury is such as to ordinarily produce it.

3. ———: **FUTURE PAIN AND ANGUISH.** If the injuries are permanent or are reasonably certain to last an indefinite period and are reasonably certain to continue to cause bodily pain and mental anguish, such future pain and anguish are proper elements of damages.

4. ———: **NOT EXCESSIVE.** Considering the nature, character and extent of the injuries as shown by plaintiff's evidence, a verdict for $2,000 held not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann, Crawley, Jamison & Collet* and *Geo. W. Easley* for appellant.

(1) Mental anguish can be a constituent element of damages only when so connected with the physical injury as to render it certain that mental anguish existed as the necessary result of the injury. In all other instances, it is only allowed when accompanied with circumstances of malice, insult or inhumanity. Trigg

v. Railroad, 74 Mo. 147; Deeming v. Railroad, 80 Mo. App. 152.    Future anguish of mind can not be recovered for except "when the injury is permanent and the future pain reasonably certain."    Gerdes v. Iron & Foundry Co., 124 Mo. 361; Haniford v. City of Kansas, 103 Mo. 172; Whalen v. Railroad, 60 Mo. 233; West v. Forrest, 22 Mo. 344; McMillen v. Union, Etc., Works, 6 Mo. App. 434; American Straw Board Co. v. Faust, 12 Ind. App. 421.    (2)   The instruction authorizing the jury to give damages for future mental anguish, distinguished from physical pain, there being no disfigurement or distortion of the person—nothing to produce mental anguish as distinguished from physical pain, either in the past or the future of the case—the giving of that instruction was error.   Such damages are not recoverable, and, if they were, there is no evidence of any mental anguish, past or prospective, in the case.   The nature and character of the injury do not make it even probable that future mental anguish would ensue.   Railroad v. Spurney, 69 Ill. App. 540, 2 Am. Neg. Rep. 505; Railroad v. Cole, 165 Ill. 334, 46 N. E. 275; Ford v. City of Des Moines, 4 Am. Neg. Rep. 379; Fry v. Railroad, 45 Iowa 416; Railroad v. Caulfield, 63 Fed. 399.    (3)   The evidence of mental anguish must rest upon the nature and character of the injury and its natural tendency to produce anguish, and on that alone. Any other rule would open the door to the grossest frauds.    Stowe v. Haywood, 7 Allen (Mass.) 124; Brown v. Railroad, 99 Mo. 319; Bovee v. Danville, 53 Vt. 190; Voorhies on Meas. of Dam. sec. 93; Schmitt v. Railroad, 119 Mo. 277.    (4)   There was no proof offered to show the value of the plaintiff's time, nor any facts that enabled the jury to ascertain the extent of her loss, and on that score she could only recover nominal damages.   Watson on Damages, sec. 19; Voorhies on Meas. of Dam., sec. 54; Owen v. O'Reilly, 20 Mo. 603.

*Xenophon P. Wilfley* for respondent.

(1) Physical pain and mental anguish are proper elements of damage when bodily injuries are alleged and proved. It is not necessary to make specific proof of pain and mental anguish. These elements of damage are sufficiently shown by the evidence which discloses the nature, character and extent of the injuries. From such evidence the jury may infer pain and mental anguish. Brown v. Railway, 99 Mo. 310; Berger v. Railway, 71 S. W. 104; Railway v. Warner, 108 Ill. 538; Newman v. Tel. Co., 54 Mo. App. 443. (2) This is true of future as well as past physical pain and mental anguish. Bigelow v. Railway, 48 Mo. App. 367; Sedgwick on Damages, 86; Eberly v. Railway, 96 Mo. App. 371; Chilton v. St. Joseph, 143 Mo. 199; Tredwell v. Whittier, 80 Cal. 581; Feeney v. Railway, 116 N. Y. 375. (3) It is not necessary to specifically allege damage for the future effects of injury sustained when permanent injury is alleged, from which future consequences may reasonably be expected. Compensation for prospective damages, on account of the permanency of a personal injury, is recoverable. Watson on Damages for Personal Injuries, pars. 300 and 304; Bradbury v. Benton, 69 Me. 199; Gorman v. Railway, 113 Mo. 422; Rosenkranz v. Railway, 108 Mo. 16; Whalen v. Railway, 60 Mo. 323; Tuoney v. O'Reilly, 3 Misc. (N. Y.) 302; Schmitz v. Railway, 119 Mo. 278; Bartley v. Trorlicht, 49 Mo. App. 318; Golden v. City of Clinton, 53 Mo. App. 117; Clark v. Hill, 69 Mo. App. 541. (4) The damages are not excessive for the bodily pain and mental anguish endured and suffered, and that will be suffered in the future, time lost, expense of being cured, and the permanent physical injury inflicted. Brown v. Railroad, 39 Mo. 318; Dewese v. Meramec Iron Mfg. Co., 54 Mo. App. 476; Bendoin v. Ironton, 116 Mo. 358; Barr v. City of Kansas, 121 Mo. 22; Hill v. Sedalia, 64 Mo. App. 494; Allen v. Springfield, 61 Mo. App. 270; Honeycott v. Railroad, 40 Mo. App. 679.

STATEMENT.

On the tenth of December, 1902, plaintiff undertook to board one of defendant's street cars traveling west on Chestnut street, in the city of St. Louis. The car, in response to a signal given by plaintiff's escort (Frank Chase), stopped at the northwest corner of Chestnut and Eleventh streets to allow plaintiff and others to get aboard. Two other ladies got on the car preceding plaintiff. Plaintiff was in the act of getting on and was in this position: with one foot on the lower step, holding to the handrail with the left hand, and her other foot raised to take a step onto the car, when the car started with a sudden jerk, threw her off her balance, dragged and injured her.

Plaintiff testified in respect to the accident as follows:

"When I put my foot up on the car it was perfectly still, and took a hold, and at that time it started with a wicked jerk. I thought, and I just screamed as loud as I could, I thought I was, anyway, but I hung on; I don't know why I did, but I screamed and begged them to stop, just as loud as I could, I thought, and of course I don't know much other than that they picked me up. I remember starting to fall; I don't remember my hold breaking loose; I remember I had a hold tight, but it seemed as though it would pull this shoulder off, but I never thought of turning loose. I don't know why I didn't; I didn't think anything about it, but I remember it seeming as though my shoulder would break off, and I was dragged down this way, it seemed to me; I know something was bearing me and I thought I was going under the car. . . .

"I don't know just the position, just the way I struck the street, but I remember when I was falling, and I know that it seemed to me that something was hitting me, I don't know, but I know this side, this knee must have been dragging. The first I knew, they

were picking me up and taking me into a little barber shop, a colored man's barber shop, and this right knee then was hurting me worse than anywheres, and two or three, I don't know how many, took me over to the dispensary; I think it is right across the street, and the doctors examined it."

From the dispensary plaintiff was conveyed by an ambulance to her home and a physician called in who attended her.

Frank Chase testified he was a roomer in plaintiff's house and on the day of the accident accompanied her down town. He said:

"I went with Mrs. Batten; she wanted to pay a little bill, and after she paid it, we started from Market street to Chestnut street to take the car at Eleventh street for her home. At that time I was boarding at her house with her. And the car came along and I signaled it, and there were two ladies there. The car stopped, the two ladies got on. One lady got onto the upper step, the platform; the other lady got onto the next step to it, and Mrs. Batten had one foot on the lower step and the other one was off from the ground as the car started. It started very suddenly; I think, perhaps, I would say, it started more suddenly than usual. It threw Mrs. Batten off onto the ground, and it was all done in a second, as we may say. She struck on the ground; I helped her up and we took her into a barber shop, and there we helped her across from the barber shop to the dispensary, and we called a physician there at the dispensary, that belongs there, and he examined her and he said she was hurt very bad."

In respect to her injuries, plaintiff testified that when she got home she was carried in and put to bed; that she was unable to turn over or be turned over for eleven or twelve days on account of soreness in her back, hip and shoulder; that she suffered great pain and urinary trouble followed the injury; that her knee had recovered, but her back and shoulder had not re-

covered; that at times when on her feet her right leg would give away and she would sink to the ground.

Dr. Reed, the physician first called by the plaintiff, testified that he found no bruises, but the parts were swollen; that there was a sprain and there seemed to be a great many muscles involved in the accident; that plaintiff had difficult and painful urination.

Dr. Reed did not visit her after the eighteenth of December, 1902. For some reason he was discharged and Dr. J. W. Vaughn was called.

Dr. Vaughn testified that he was called to see plaintiff on the nineteenth of December, 1902, and continued thereafter to treat her. He stated that he examined her the day he was called and found on the right knee an enlargement the size of a teacup; that the joint was evidently injured; that there was present an abnormal secretion of fluid in the part resulting from the injury; that he found a blackish bluish condition extending over a space about the size of his two hands on the right hip and the soft part of the hip was enlarged; that there was pain upon any slight pressure in the hip joint and the joint itself was evidently injured; that there was tenderness upon motion of the left shoulder, and that while the injury he found was not serious it was probably permanent; that a few days later he examined the spine and "found upon pressure at the lower part of the abdominal cavity that she had more or less tenderness there, but especially at the lower part I found tenderness upon pressure, which would indicate that there was some trouble with the bladder or womb;" that "on a later examination, about three weeks later, or four weeks later—yes, probably five weeks later—on another examination I found that the uterus had contracted in size, but was antroverted and tipped over upon itself and was resting upon the bladder, and it accounted for this pressure and frequent micturition and painful micturition. About a week ago I found the same position of the womb. I found

on two subsequent thorough examinations that in the hip joint there is an effusion of fluid. This synovial membrane, which lubricates the joint there, is perfectly perceptible, no effusion in the joint, four months after the injury, showing that there is an inflammation. Not only do we find that there is effusion in the joint, but when you take that joint and turn it you will find a roughing sound, showing that not only is there synovial fluid in excess in it, but there has been an inflamed condition and that inflamed condition remains to the extent of having this roughened surface, and is indicative of the inflammatory condition. It may last all her life and then she may get over it. The longer you have a condition of that kind existing, say four months—if you get over it in two months, if the condition begins to get better in two months, the indications are they will get well much sooner, but lasting for four months, the indications are, in my judgment, that it will be more or less her lifetime, though no man can tell. But my judgment is, from the indications, four months, I say she will have more or less trouble there the rest of her life, because there is fluid in the joint.''

He further testified that the hip joint is considered by surgeons to be the ''most serious joint that may become injured, because of the support of the body and the blood supply. I want to state in addition that the hip itself, the bone, is still enlarged. There is tenderness as you press upon the bone itself, showing a thickening, evidently from the point of that membrane which covers the bone, the periosteum.''

The evidence of Dr. Vaughn is corroborated by that of Dr. W. W. Vaughn and Dr. Fleming, both of whom made examinations of plaintiff. The examination made by Dr. Fleming was made only a few days before the trial. Speaking of the injury to the hip, Dr. Fleming said:

''Where the fluid is increased it is thrown out of that relation that is necessary in a joint that carries us

on or makes us move along with an easy, gliding motion. If there is the least variation, a little excess of fluid, a little spasm of the different movements of the muscles that regulate this hip, as a result of that, when her mind is off guard, she necessarily will drop on that hip. It catches us; throws us back. You know we walk automatically; our mind is no longer on the walking, and whenever we have any trouble in our hip it throws us back to our childhood, and we have got to learn to use it all over again, where, if we unconsciously try to make steps, when we are not on our guard, a little excess of fluid, a little contraction of one of these muscles, when we are thrown off our guard, we fall. This is the explanation I would give as the reason for this.''

The defendant produced as a witness, Dr. E. C. Grimm, a physician for the defendant company, who testified he examined the plaintiff on the day of the accident and thought she would get well in about three weeks; that he made another examination, in the presence of Dr. J. W. Vaughn, about two months later, and found no evidence of any injury to plaintiff's knee, hip, back or shoulder; that she moved about the house and went up the stairs without showing any signs of injury or weakness in the hip.

Dr. Campbell, a witness for defendant, testified that he examined plaintiff about a week before the trial and found no external evidence of any injury to her knee, hip or shoulder, and could discover no injury to either.

The jury found for plaintiff and assessed her damages at $2,000. A motion for new trial proving of no avail, defendant appealed.

BLAND, P. J. (after stating the facts as above).—
1. The main contention of defendant is that the court erred in giving the following instruction on the measure of damages, to-wit:

''3. If the jury find for the plaintiff they should

assess her damages at such sum as they may believe from the evidence will be a fair compensation to the plaintiff, first, for any pain or anguish of body and mind which the jury may find from the evidence she has suffered or will hereafter suffer by reason of her injuries and directly caused thereby; second, for any loss of the earnings of her labor which the jury may find she has sustained or will thereafter sustain by reason of said injuries and directly caused thereby; third, for any expenses she may have incurred for medical attention and nursing; the whole not to exceed the sum of ten thousand dollars, which is the amount claimed in the petition.''

It is insisted that there was no evidence of plaintiff's earning capacity and that this element of damages should not have been incorporated in the instruction. Plaintiff testified that she was keeping a boardinghouse when she was injured; that prior to her injury she did certain necessary work in and about the keeping of the house; that after her injury she was unable to do any of this work and was compelled to hire others to do it for her; that this hired help cost her a certain sum each week. It seems to us that this evidence furnished a substantial and reasonable basis from which the jury could, with reasonable correctness, estimate the value of plaintiff's individual labor in the conduct of her business and hence it was proper to call the juror's attention to this element of damages.

2. It is next insisted that in a case like this, future mental anguish should not enter into a computation of damages; but future mental anguish can only be considered in estimating damages in a case where the injury complained of has resulted in the loss of an eye, or a limb, or in some external and visible injury that mars the beauty and symmetry of the body that the injured one should be ''curtailed of this fair proportion . . . so lamely and unfashionably, that dogs bark at me, as I halt by them.'' This contention would have force if

shame and mortification had been incorporated in the pleadings and instruction as elements of damages. But anguish may be produced without any disfigurement of the body. It is produced by extreme pain of body or mind or of both, and it may be presumed to exist where the nature, character and extent of the injury is such as to ordinarily produce it. Brown v. Railway, 99 Mo. 310; Newman v. Telegraph Company, 54 Mo. App. 1. c. 443. If the injuries are permanent, or are reasonably certain to last an indefinite period and are reasonably certain to continue to cause bodily pain and mental anguish, such future pain and anguish, it has been repeatedly held, are proper elements of damages. Smiley v. Railway, 160 Mo. 629; Chilton v. St. Joseph, 143 Mo. 192; Bigelow v. Railway, 48 Mo. App. 367; Feeney v. Railway, 116 N. Y. 375. We think, under the evidence and on the foregoing authorities, the instruction was proper.

3. Complaint is made that the damages are excessive. If the injuries are of the nature, character and extent plaintiff's evidence shows them to be, then it seems to us that plaintiff has more reason to complain of the inadequacy of the damages than has defendant to complain that they are excessive.

Discovering no reversible error in the record, the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.