# WRIGHT v. KANSAS CITY, Appellant.

### Division Two, March 30, 1905.

1. **PRACTICE: Perjured Testimony.** If an examination of the record discloses that the verdict rests upon perjured testimony, and was insufficient to support the finding of the jury, the judgment will be reversed. But it is especially the province of the jury to determine the credibility of witnesses, and the weight that is to be given to their testimony. And if the most that can be said of the testimony is that it is more or less irreconcilable, and that for plaintiff, if true and believed by the jury, is sufficient to support the verdict, the judgment will not be reversed.

2. **NEGLIGENCE: Immorality of Plaintiff.** The fact that a female plaintiff lived with a man not her husband, is no ground for denying her a right to recover for injuries due to a defective sidewalk; and where defendant has brought the fact of her immorality to the attention of the jury, it is not error for the court to tell the jury that that fact does not affect her right to recover for injuries due to defendant's negligence.

3. ———: **Instruction: Hypercritical Objection.** Criticisms upon instructions which amount to a mere play upon words are not entertained.

4. ———: ———: **Permanent Injuries.** An instruction which tells the jury that they "may take into consideration the physical injuries inflicted, if any," is broad enough to include all character of injuries, whether permanent or otherwise. There is no rule of law which requires the court to expressly tell the jury that they must find that plaintiff's injuries are permanent.

5. ———: ———: **Credibility of Witnesses.** Where the court has already given a correct instruction on the credibility of witnesses, it is not error to refuse one of like tenor asked by defendant.

6. **CHANGE OF VENUE: No Exception.** Where appellant saved no exception to the order of the court awarding a change of venue to a county which was not "contiguous," the error, if any, cannot be considered on appeal.

7. ———: **Contiguous County.** Where the application for a change of venue from Jackson county was based on the prejudice of the judges and the prejudice of the inhabitants, and the order granting the change does not specify upon which ground

it was awarded, the statute (Laws 1879, p. 82), authorizing a change of venue on account of the prejudice of the judges to the circuit court of some contiguous county, does not destroy the jurisdiction of the circuit court of a county not contiguous to Jackson county to which the cause is sent, for that act applies only when the change is awarded on account of the prejudice of the judge.

Appeal from Benton Circuit Court.—*Hon. W. W. Graves*, Judge.

AFFIRMED.

*R. J. Ingraham, J. G. L. Harvey* and *L. E. Durham* for appellant.

(1) Inasmuch as appellant cannot, in a case like this, have the judgment set aside, or the enforcement of it restrained, by a bill in equity, the right to insist upon either the trial court or this court exercising the right to prevent the accomplishment of a fraud by perjury, is manifest. Wonderly v. Lafayette Co., 150 Mo. 639; Hamilton v. McLean, 139 Mo. 688; Fears v. Riley, 148 Mo. 61. The bald, bold perjury by respondent is as clear as the noonday sun. (2) Moreover, instructions numbered 2 and 3, given for respondent, were plainly calculated to eliminate from the case this ugly feature, and left appellant practically without power to urge it before the jury. So that, if this judgment stands, appellant cannot attack it by bill in equity, and a fraud, plain and bold, has been worked in a court of justice. Instructions numbered 2 and 3, given for respondent, are comments on the evidence, and therefore improper. Barr v. City, 105 Mo. 557; Railroad v. Stock Yards, 120 Mo. 559; Liese v. Meyer, 143 Mo. 562; Bertram v. Railroad, 154 Mo. 655; Heyden v. Parsons, 70 Mo. App. 497. (3) Instruction 1, given for respondent, was wrong, in that it required the city to repair (not by ordinary care), but to repair. In this respect it conflicted with appellant's instruction on that point, and

should not have been given in that form. Baustian v. Young, 152 Mo. 325; Fehlhauer v. St. Louis, 178 Mo. 649; Buckley v. Kansas City, 156 Mo. 25; Williams v. Hannibal, 94 Mo. App. 556. (4) Instruction numbered 4, given for respondent, is erroneous, in that it does not confine the jury to the evidence. It did not require a finding of permanent injury, to support a recovery for future suffering. It assumed both of these elements. Smiley v. Railroad, 160 Mo. 629; Girdes v. Iron Co., 124 Mo. 361; Albin v. Railroad, 103 Mo. App. 318; Batten v. Railroad, 102 Mo. App. 285; Bigelow v. Railroad, 48 Mo. App. 367. (5) Instruction numbered 18, asked by appellant, should have been given. No other instruction so fully covered the law of the subject. (6) The demurrer to the evidence should have been sustained. There was no proof that the city built the walk, or that it opened the street for public travel. Ely v. St. Louis, 81 S. W. 168. (7) The Benton County Circuit Court had no jurisdiction, as the change of venue was improperly granted to that county. Laws 1889, p. 77; sec. 822, R. S. 1899; State ex rel. v. Spencer, 164 Mo. 48; Manker v. Faulhaber, 94 Mo. 430; Donnell v. Lee, 101 Mo. App. 191; State v. De Bar, 58 Mo. 395; McVey v. McVey, 51 Mo. 406.

*Lay & Lay, George W. Wright* and *C. S. Leonard* for respondent.

(1) The appellant's contention of the law in its first point is not the law and the citations made do not support any such contention. Fears v. Riley, 148 Mo. 61; Hamilton v. McLean, 139 Mo. 87; Nichols v. Stevens, 123 Mo. 96; Moody v. Peyton, 135 Mo. 482. Respondent denies that any evidence in the record discloses perjury, except it be that of the Kansas witnesses. This evidence was submitted to the jury, which by its verdict, promptly, quickly and justly resented the attempt on its credulity and branded the testimony as

false and libelous.  (2)   Instructions 2 and 3, com-
plained of, simply withdraw from the jury the evi-
dence of immoral conduct between plaintiff and the wit-
ness Wright, and are not comments upon the evidence.
State v. Rogers, 108 Mo. 204; State v. Gesell, 124 Mo.
535; McFadin v. Catron, 120 Mo. 264; Semple v.
Crouch, 8 Mo. App. 593; Anderson v. Railroad, 161 Mo.
411; Prior v. Railroad, 85 Mo. App. 367.  (3)   The
defendant tendered no instruction upon the measure of
damages.  If it desired a finding that the injuries were
permanent, it should have offered an instruction ac-
cordingly.  Wheeler v. Bowles, 163 Mo. 409; Dunn v.
Railroad, 81 Mo. App. 45; State ex rel. v. Fidelity Co.,
94 Mo. App. 198.  (4)  The contention of appellant that
the court of Benton county had no jurisdiction is not
tenable for several reasons:   First, because if the court
erred in granting a change of venue, it is a matter to be
corrected on error or appeal, and must be preserved by
a bill of exceptions in the court awarding the change
of venue. Stearns v. Railroad, 94 Mo. 321; State ex rel.
v. Evans, 184 Mo. 632; Eudaley v. R. R., 186 Mo. 399;
State v. Ware, 69 Mo. 332. Second, appellant, by agree-
ment that the case be sent to the circuit court of Benton
county, waived subsequent objection to the jurisdiction
of the trial court, and is estopped from urging the
point in question.  The conduct of appellant undoubt-
edly gave jurisdiction to the circuit court of Benton
county.  Hardware Co. v. Riddle, 84 Mo. App. 275; State
ex rel. v. Cryts, 87 Mo. App. 440; Ivy v. Yancey, 129
Mo. 501.  Third, the motion filed in the Benton County
Circuit Court was not a motion to the jurisdiction over
the person of defendant, but a motion to remand the
cause to Jackson county "for the reason that said cir-
cuit court had no power to award a change of venue to
any other than a county contiguous to said Jackson
county."  The defendant could at will, by such pro-
ceedings, annul the statute in such cases and defeat

the judgment of the court. The courts will not permit such jugglery and trifling. State ex rel. v. Neville, 157 Mo. 386; Levin v. Railroad, 140 Mo. 624.

FOX, J.—This is an action by plaintiff to recover damages for injuries alleged to have been sustained by her on a plank sidewalk on the west side of Kansas avenue, a public street of Kansas City, Missouri.

The injury is alleged to have occurred October 30, 1899. The negligence complained of is that the defendant negligently and carelessly permitted the wooden sidewalk on the west side of Kansas avenue, between Eighteenth and Nineteenth streets, and about opposite and adjacent to numbers 1808 and 1810, Kansas avenue, to become out of repair, unsafe and dangerous to persons walking thereon, in this, to-wit: that the wooden stringers or sills, upon which the boards forming the surface of said board sidewalk were laid, had become decayed, rotten and worn away, and the boards of said wooden sidewalk had become unfastened and loose from these stringers and supports, so that persons walking thereon were greatly endangered from the loose boards tilting, flying up, tripping and precipitating such persons upon said sidewalk or ground. That said defective and dangerous condition of said board sidewalk was known to defendant for a long period of time prior to the time of the injuries complained of herein, sufficient for the defendant, in the exercise of ordinary care and diligence, to have repaired said sidewalk, or by the exercise of ordinary care defendant could have discovered the defective and unsafe condition of said board sidewalk and could have repaired the same in time to have averted and prevented the injuries to plaintiff hereinafter mentioned.

The manner in which the injuries complained of were received, are thus stated: That on or about the 30th day of October, 1899, at about 6 o'clock p. m., she, in company with one Mrs. Harris, was walking side by

side, south, on the board sidewalk on the west side of said Kansas avenue, about opposite and adjacent to numbers 1808 and 1810 Kansas avenue, between Eighteenth and Nineteenth streets, in Kansas City, Missouri, and that when at the place aforesaid, and while in the exercise of due care and caution, one of the loose boards of said sidewalk tilted and flew up, struck plaintiff upon the left leg about midway between the knee and ankle, on the tibia bone, with great force, so that plaintiff was thrown to and upon said sidewalk; that plaintiff's left leg was thereby severely hurt, bruised and injured, and plaintiff otherwise bruised, strained and contused; that the injury to plaintiff's left leg resulted in an open wound and sore known as a "shin-abscess," which is a permanent injury and a constant menace to plaintiff's life and limb; that plaintiff has suffered and will continue to suffer the remainder of her life, great pain of body and mind; that plaintiff has been rendered incapable of performing her usual avocation, and her ability to earn a livelihood has been greatly impaired; for which injuries plaintiff prays for judgment in the sum of ten thousand dollars.

The answer of the defendant city was a general denial and a plea of contributory negligence.

Plaintiff testified in her behalf. Her testimony tends to show substantially this state of facts: that she is 57 years old; resides in Kansas City with her husband, and was injured October 30, 1899, on a sidewalk on the west side of Kansas avenue, between Eighteenth street and Nineteenth street, about opposite No. 1810; that while she and a Mrs. Harris were walking south, side by side, Mrs. Harris stepped a little in front, tipping a loose plank, so that her left foot and leg slipped or fell through about two feet, throwing her violently forward upon her face; that the sharp edge of the board caused a large bruise upon her left leg between the knee and ankle; that the injury did not respond to treatment, but resulted in a large, painful and running sore; that

she was not familiar or acquainted with the sidewalk at the place of injury and had never been over it before; that her sufferings were intense; that she kept her foot in a horizontal position on a pillow for six weeks; that she was for a longtime wholly incapacitated from performing her necessary household duties, and was capable of doing them indifferently and with great difficulty at the time of the trial; that her husband and son were compelled to do them; that she is not now and never will be able to earn a livelihood, can not wear a shoe, has lost much flesh, and can not stand for any length of time on her foot.

Two other witnesses were present at the accident, Mrs. Harris and Frank C. Rodenwald.

Mrs. Harris states that she was acquainted with the sidewalk where respondent was injured, for two years; that the boards were loose and stringers rotten; that, while walking south, side by side, with respondent, one of the loose planks flew up or turned over and respondent's left foot and leg slipped under it and she fell forward on her face and remained there sometime; that she had never seen Mrs. Wright until that time.

Rodenwald says that he had known the sidewalk at the point of the accident four or five years; that the boards had been loose and rotten two or three years prior to the accident; witnessed the accident; saw her lying on her face, her head toward the south, her left leg down between the boards about two feet; that he helped her out and then went on; that he recognized Mrs. Harris who was with Mrs. Wright, but did not know respondent.

There was other testimony introduced showing that the sidewalk at the place of the injury had been in bad condition; the boards rotten and loose at one end for three or four years before the accident; that the appellant had repaired the sidewalk in that vicinity twice during that time.

Drs. Palmer, Sharp and Pearse testified as to the

injury shown them by plaintiff, and the tendency of their testimony is to the effect that it was a serious injury, and would probably give plaintiff a great deal of trouble. It is unnecessary to reproduce in detail their testimony.

There was sufficient testimony to authorize the jury to find that Kansas avenue, at the place where the injury is alleged to have occurred, was one of the public streets of the city, within its corporate limits, and that it was the duty of the city to keep the sidewalk of such avenue in a reasonably safe condition for the use of the people who might have occasion to use such walk. We see no necessity for burdening this opinion with a detailed statement of the testimony upon this subject.

Defendant introduced numerous witnesses, among them were Elizabeth Cress, Amanda Seevers and Armilda Dixon, who lived in the same house with plaintiff; they stated that plaintiff had complained of her left leg as early as July, prior to the time she claimed to have been injured on the sidewalk on the 30th of October, 1899. Other witnesses testified on behalf of defendant and their testimony tends to prove that plaintiff was leading an immoral life; that is, was living part of the time with a man by the name of W. H. Wright in Argentine, Kansas, and at other times with her husband, at various places in Kansas City, Missouri.

This is a sufficient indication of the facts developed at the trial to enable us to determine the legal questions presented in the record.

At the close of the evidence the court, at the request of plaintiff, gave instructions numbered 1, 2, 3 and 4, as follows:

"1. The court instructs the jury that if they believe from the evidence that on or about the 30th day of October, 1899, Kansas avenue was a public highway and street of Kansas City in Jackson county, Missouri; that the wooden sidewalk upon the west side of

said Kansas avenue between Eighteenth and Nine-teenth streets, and about opposite and adjacent to num-ber 1808 and 1810, was out of repair, and not in a rea-sonably safe condition for travel thereon by footmen, by reason of the decayed, rotten or unsound stringers thereunder, or by reason of the boards of said sidewalk being loose, unfastened or insecurely nailed to said stringers or supports, or both; that defendant by the exercise of ordinary diligence could have known of the defective and unsafe condition of said sidewalk for a period of time reasonably sufficient to have repaired the same before the alleged injuries to plaintiff; that while plaintiff in the exercise of ordinary care, was walking south on said board sidewalk on the west side of said Kansas avenue and while about opposite and adjacent to numbers 1808 and 1810, one of the loose boards of said sidewalk tilted and flew up and struck plaintiff upon the left leg with such force as to throw her to and upon said sidewalk and to injure her as com-plained of, then your verdict should be for the plain-tiff.

"2.  Although the jury may believe from the ev-idence that plaintiff lived with one W. H. Wright in an immoral relation, that fact does not in the least affect her right to recover in this case, provided you find that she is entitled to recover under the evidence and other instructions herein.

"3.  The court instructs the jury that the facts, whether the plaintiff was chaste and of moral charac-ter or not, at, prior or subsequent to the time of the alleged injuries, should not be considered by the jury in determining the negligence of the defendant, Kan-sas City, as alleged, and the right of the plaintiff to re-cover for injuries received, if any.

"4.  If you find for the plaintiff, you will, in assess-ing her damages, take into consideration her age and condition, the physical injuries inflicted, if any, the bod-ily pain and mental anguish suffered, if any, and any

and all such damages of the kind and character mentioned which will in the future reasonably result to her from said injuries, not to exceed in all the sum of ten thousand dollars.''

The court, at the instance of the defendant, gave to the jury the following instructions, numbered 5, 6, 7, 8, 9, 10, 11, 12, and 13:

''5.   The court instructs the jury that the defendant city is not an insurer of the safety of those who travel over its sidewalks, and though the jury may believe from the evidence that plaintiff fell, as she has alleged in her petition, yet, if you .find that her fall was not due to any negligent act or omission on the part of the city, she cannot recover damages for her fall, and your verdict should be for the defendant city.

''6.   The court instructs the jury that it is the duty of the defendant city to keep its sidewalks in a reasonably safe condition for travel over them by persons traveling in the ordinary manner and exercising ordinary care for their own safety, and if the jury believes from the evidence that the sidewalk when and where plaintiff alleges she fell, was in a reasonably safe condition for travel, then, notwithstanding plaintiff may have fallen as she alleges, your verdict must be for the defendant city.

''7.   The court instructs the jury that the defendant city is not liable for every defect which may exist in its sidewalks, though it may cause an injury to a person traveling over it, but it is liable for only such defects as may be discovered by the exercise of ordinary care and diligence on the part of its officials charged with the supervision of sidewalks.  If the jury believe from the evidence that the defect, if any, which caused the injury to plaintiff as she alleges, was latent or hidden so that it could not be discovered by the exercise of ordinary care, then your verdict must be for the defendant city.

''8.   The court instructs the jury that it is the

duty of persons traveling over the sidewalks of a city to use their eyes and other senses to avoid defects which are obvious or could be discovered by the exercise of ordinary care on their part, and if the jury believe from the evidence that plaintiff, by the exercise of ordinary care, could have avoided or passed over the defect, if any, which she alleges caused her injury, then your verdict should be for the defendant city.

"9. The court instructs the jury that if you believe that all or any part of the physical ailments or consequent pain and suffering which plaintiff alleges she has now, existed in plaintiff before her alleged fall, then for all such pre-existing ailments you can award plaintiff no damages.

"10. The court instructs the jury that by the term ordinary care as used in these instructions is meant such care as would be exercised by a person of ordinary prudence under the same or similar circumstances.

"11. The court instructs the jury that before the city can be made liable for an injury caused by a defect in a sidewalk, notice of the existence of the defect. must be given to the officials of the city charged with the supervision of its streets and sidewalks. Such notice may be actually given to some official or it may be implied from long continued existence of such defect.

"The court instructs the jury that there is no evidence in this case of actual notice to any such city official of the alleged defect which caused plaintiff to -fall, and unless the jury believe from the evidence that the sidewalk where plaintiff alleges she fell had been in a defective condition for a sufficient length of time before plaintiff fell that said city officials would have discovered it by the exercise of ordinary diligence in time to have repaired it before plaintiff fell, then your verdict must be for the defendant city.

"12. The court instructs the jury that the burden of proof in this case devolves upon the plaintiff

to establish by a preponderance of the evidence every fact necessary for her to recover, and by a preponderance of the evidence is meant the greater weight of the credible testimony in the case.

"13. The court instructs the jury that plaintiff cannot recover damages in this action for any injury which was not received at the time and place alleged in her petition, that is to say, October 30, 1899, and on the sidewalk on the west side of Kansas avenue, about opposite and adjacent to numbers 1808 and 1810 in Kansas City."

The court of its own motion gave to the jury the following instructions numbered 14 and 15, to which the defendant objected and then and there duly excepted to the action of the court in giving the same.

"14. If three-fourths or more of your number, that is to say, nine or more of your number, concur in a verdict, then such verdict so concurred in by nine or more of your number may be returned as the verdict in this case. If, however, the verdict is concurred in by nine or more of your number and less than the whole jury, then those concurring in such verdict should sign the same, and it should not be signed by your foreman in his capacity as foreman. But on the other hand, if the verdict is concurred in by all of your number then it would be signed simply by your foreman in his capacity as foreman.

"15. The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight they will take into consideration the character of the witness, his manner on the stand, his interest, if any, in the result of the trial, his relation to or feeling towards the parties, the probability or improbability of his statements, as well as all the facts and circumstances given in evidence. In this connection you are further instructed that if you be-

lieve that any witness had knowingly and willfully sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony."

The defendant asked the court to give to the jury the following instructions, numbered 16, 17, 18 and 19, which said instructions were by the court refused. To which action of the court in refusing to give said instructions the defendant then and there duly excepted at the time:

"16. Now at the close of plaintiff's case the court instructs the jury that under the pleadings and the evidence in this case your verdict must be for the defendant, Kansas City.

"17. The court instructs the jury that if you believe that any witness has willfully and recklessly testified falsely to any material fact in issue, then you are at liberty to disregard all or any part of the testimony of such witness.

"18. The court instructs the jury that you are the judges of the credibility of the witnesses and of the weight to be attached to the testimony of each and all of them, and you are not bound to accept the testimony of any witness as absolutely true, and you should not do so if you are satisfied from all the facts and circumstances in evidence that such witness is mistaken in the matters testified to by him or her, or that for any other reason his or her testimony is untrue and unreliable.

"19. Now at the close of all the evidence the court instructs the jury that under the pleadings and evidence in this case your verdict must be for the defendant, Kansas City."

The cause was submitted to the jury upon the evidence adduced and instructions of the court, and they returned a verdict for plaintiff, assessing her damages at the sum of $2,500, and judgment was accordingly rendered upon said verdict. From this judgment defendant, in due time and proper form, prosecuted this

appeal, and the cause is now before us for consideration.

## OPINION.

Numerous assignments of error are presented by the record in this cause as reasons for the reversal of this judgment. We shall give to the complaints of appellant such consideration as their importance merit and demand.

First, it is insisted by appellant that this judgment was procured by the commission of perjury on the part of the plaintiff, and that as defendant can not, by a bill in equity, have the judgment set aside or its enforcement restrained for that reason, the trial court or this court should prevent the accomplishment of such a fraud.

Upon this contention it is sufficient to say that if an examination of the record disclosed that the testimony upon which the judgment rests, was perjured testimony, and was insufficient to support the finding of the jury, it would clearly be the duty of this court to reverse the judgment upon that ground.

We have carefully considered the evidence developed at the trial, and find that this case is no exception to the ordinary contested cases of similar character, in which there is always more or less irreconcilable conflict of the testimony of witnesses.

If the testimony introduced by plaintiff was true and believed by the jury, it was clearly sufficient to support the verdict. The trial court heard this testimony as well as the jury. It is evident the jury did not believe it was perjured, for they returned a verdict upon it, and it is equally clear that the learned judge presiding at this trial did not so believe, for he refused to grant a new trial. It would, indeed, be a dangerous precedent for this court to establish, to usurp the province of the triers of the facts, and undertake to settle

the contradictory statements of witnesses, and practically retry the case in this court. This we are unwilling to do.

The plaintiff in this case was before the jury, and the testimony contradicting her evidence was also before the jury. The record discloses a rigid and exhaustive cross-examination of the plaintiff, and also discloses the character and standing of the witnesses whose testimony tends to contradict her, and it was specially the province of the jury to determine their credibility and the weight to be attached to their testimony. It must also be noted that a careful analysis of the disclosures of the record point mostly to contradictions of plaintiff upon the question of her moral conduct, and not upon the essential elements of the cause of action upon which a recovery is sought.

Appellant earnestly insists that instructions numbered 2 and 3 given for the plaintiff were erroneous. Instruction 2 simply told the jury that if plaintiff lived with one W. H. Wright in an immoral relation, that fact did not effect her right to recover in this case, provided they found that she was entitled to recover under the evidence and other instructions in this cause.

It will certainly not be seriously contended that an immoral relation of the character designated in the instructions, could prevent a recovery for injuries received by reason of the negligence of the defendant. There is no sort of connection between the acts of negligence complained of and the acts of immorality mentioned in the instructions. Coupled with some of the evidence introduced by defendant, applicable to the issues involved, there was other evidence tending to show the immoral relation treated of in the instructions. The court properly recognizing the irrelevancy of that testimony as tending to prove the issues presented by the pleadings, simply gave the instructions complained of to the jury, which in our opinion is without objection. The immoral conduct of the plaintiff

could only have been admissible for the purpose of affecting her credibility as a witness, and this could only be shown by her general reputation in the neighborhood in which she resided for chastity and virtue. "Evidence of specific and independent immoral acts were not admissible for the purpose of impeaching her character as a witness." [State v. Rogers, 108 Mo. l. c. 204; State v. Gesell, 124 Mo. l. c. 535.]

Instruction 3 properly declared the law, that the jury in determining the negligence of the defendant, as alleged, and the right of the plaintiff to recover for injuries received, should not take into consideration the immoral character of the plaintiff, at, before or subsequent to the time of the alleged injuries, and it was proper for the court to so instruct the jury in view of the tendency, by some of the witnesses, to show an immoral relation between the plaintiff and one W. H. Wright.

The instructions complained of properly declared the law, and in no way were they calculated to prevent the jury from considering the competent and relevant testimony upon the issues presented by the pleadings.

The correctness of instruction numbered 1 is challenged by appellant. It is urged that it is in conflict with instruction numbered 11 given for the defendant. This complaint is directed at that portion of instruction 1 which says "that defendant by the exercise of ordinary diligence could have known of the defective and unsafe condition of said sidewalk for a period of time reasonably sufficient to have repaired the same before the injury to plaintiff."

Defendant's instruction 11 says, "And unless the jury believe from the evidence that the sidewalk where plaintiff alleges she fell had been in a defective condition for sufficient length of time before plaintiff fell that said city officials would have discovered it by the ex-

ercise of ordinary diligence in time to have repaired it before the plaintiff fell,'' etc.

An analysis of the two instructions makes it manifest that the criticism indulged is a mere play upon words. There is substantially no difference in the two declarations, and there is no merit in the contention.

Appellant insists that instruction numbered 4 given for the plaintiff is erroneous for the reason that it does not confine the jury to the evidence, and did not require a finding of permanent injury to support a recovery for future suffering, and assumes the facts upon which it is predicated. We are unable to agree with learned counsel upon this contention. In the consideration of this instruction we must not fail to take into consideration the other instructions given in the cause in connection with it. The court in this case, by instruction 1, required the jury to find all of the essential facts necessary to entitle plaintiff to recover. This instruction is simply intended as a guide to the jury in the assessment of damages, in the event their finding is for the plaintiff. The mere reading of it demonstrates that it does not assume any fact. At the very threshold, it starts out by telling the jury that "if they find for the plaintiff" they will then be authorized to "take into consideration her age and condition, the physical injuries inflicted, if any, the bodily pain and mental anguish suffered, if any, and any and all such damages of the kind and character mentioned, which will in the future reasonably result to her from said injuries, not to exceed in all the sum of ten thousand dollars.'' There is no error in this instruction. An analysis of the cases cited by defendant demonstrates that this instruction is not in conflict with any rule announced by them, but the reverse is true—it is substantially in accord with the treatment of the subject of instruction on this subject as announced in those cases. [Smiley v. Railroad, 160 Mo. 629; Albin v. Rail-

road, 103 Mo. App. l. c. 318; Batten v. Railroad, 102 Mo. App. 285.]

In Albin v. Railroad, supra, the instruction condemned authorized the assessment of damages "for future pain and anguish *likely* to be suffered," and the court stated the true rule to be that the damages to be assessed were those only "which from the evidence will reasonably result in the future." It is apparent that the instruction complained of conforms to the correct rule as stated in that case. This instruction told the jury that they may take into consideration the physical injuries inflicted, if any. This was broad enough to include all character of injuries whether permanent or otherwise, and we know of no rule of law which required the court to expressly tell the jury that they must find that the injuries were permanent. And, as was very appropriately said in the case of Dunn v. Railroad, 81 Mo. App. l. c. 45, "the instruction was not improper as far as it went, and if defendant wished more specific direction, it should have asked it."

The next insistence by appellant is that the court erred in refusing to give instruction numbered 18. The instruction requested and refused by the court was one informing the jury that they were the judges of the credibility of the witnesses and of the weight to be attached to their testimony. It is sufficient to say of this complaint that instruction 15 given by the court of its own motion fully covered the request made by the defendant by instruction 18. Instruction 15 given by the court has uniformly met with the approval of this court and we see no reason for departing from approved precedents.

This brings us to the only remaining proposition involved in the record in this case. It is urged by appellant that the Benton County Circuit Court had no jurisdiction of this cause. This contention is predicated upon the ground asserted that the circuit court of Jackson county improperly granted the change of

venue to Benton county, the county in which this cause was finally tried. This contention is based on the act of the Legislature creating the divisions of the circuit court of Jackson county. The act creating two divisions of the circuit court of that county, section 33, provides that upon application for change of venue against one of the judges of the division to which the cause is assigned, the same should be transferred to the division held by the other judge, but if reasons for change of venue exist against both judges of said court, then the change may be allowed to the circuit court of some contiguous county. [Laws 1879, p. 82.] In 1889 an act was passed by the Legislature creating four divisions of the circuit court of Jackson county, and section 8 of that act made so much of the act of 1879 as was not repealed by inconsistency applicable to the four divisions of said court. [Laws 1889, p. 77.] The insistence, therefore, of the defendant is thus sharply stated, that this was a change of venue from the circuit court of Jackson county, and was awarded to the county of Benton, and that the county of Benton not being a contiguous county, the circuit court of that county acquired no jurisdiction by reason of the provisions of the law herein indicated.

Upon this proposition the record discloses no timely objection or exception to the order granting this change of venue, and appellant having failed to make such objection and exception and duly preserving the same by bill of exceptions, this alleged error is not reviewable in this court. [State v. Lynn, 169 Mo. 664; State v. Nave, 185 Mo. 125; Potter v. Adams' Exrs., 24 Mo. 159; State v. Knight, 61 Mo. 373; State v. Dodson, 72 Mo. 283; Squires v. Chillicothe, 89 Mo. 226; Keen v. Schnedler, 92 Mo. 516; Stearns v. Railroad, 94 Mo. 317; State ex rel. v. McKee, 150 Mo. 233.]

But aside from this it is clear that the circuit court of Benton county had jurisdiction to try this cause. The acts of the Legislature of 1879 and 1889 providing

for changes of venue, were treating of applications against the judges of the respective divisions. They did not undertake to regulate the practice of changes of venue on the ground of the prejudice of the inhabitants of the county.

The record in this case discloses that the application for change of venue was based upon two grounds: first, that the judges of each division of the circuit court of Jackson county were prejudiced against applicant and that defendant had an undue influence over said judges; second, that the inhabitants of Jackson county were prejudiced against the applicant and that the defendant had an undue influence over the inhabitants of said county. The order granting this change of venue does not specify the particular ground in the application upon which the court based this order. Hence, for the purposes of this case, it may be conceded that the court had no power to transfer the case to some county that was not contiguous to the county of Jackson, upon the first ground alleged, the prejudice of the judges, and there is still remaining a valid ground for sending the cause to the county of Benton, that is, the prejudice of the inhabitants of the county of Jackson. Upon the last ground indicated, the circuit court of Jackson county was clearly authorized under the provisions of section 822, Revised Statutes 1899, to transfer this cause to the county of Benton for trial.

We have thus indicated our views upon the legal propositions disclosed by the record before us, and finding no reversible error, the judgment should be affirmed, and it is so ordered.

All concur.