## SALLIE A. BALLARD, Respondent, v. KANSAS CITY, Appellant.

### Kansas City Court of Appeals, March 27, 1905.

1. **DAMAGES: Personal Injury: Permanency: Evidence.** *Held,* direct evidence was sufficient to send to the jury the question of the permanency of plaintiff's injuries without resorting to expert testimony.

2. ————: ————: ————: **Reasonable Certainty: Interpretation of Evidence.** Before a claim for permanent injury can go to the jury there should be evidence tending to prove such injury to a reasonable certainty but not to an absolute certainty; and the expression "in all likelihood" used by an expert witness should be treated as equivalent of reasonable. certainty, since in the interpretation of the language employed by witnesses the main object is not to draw fine distinctions based on accurate definitions of words, but to ascertain the real idea intended to be expressed.

3. ————: ————: ————: **Instruction.** The expression "may have suffered" in an instruction is descriptive of completed action and equivalent to "has suffered," and is not subject to the objection that it licenses the jury to revel in mere probabilities, but it confines to the investigation of an existing fact.

4. ————: ————: ————: ————. Where there was a conflict in the evidence as to the permanency of plaintiff's injury, and the jury was free to reject such claim entirely, an instruction authorizing a recovery for such bodily pain and mental anguish as plaintiff "may suffer by reason of her injury in the future, if any," was erroneous, as not limited to the bounds of "reasonable probability."

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*R. J. Ingraham,* City Counselor, and *L. E. Durham* for appellant.

(1) It was reversible error for the trial court to instruct the jury in this case that they should assess

damages in favor of plaintiff "for any pain of body and mental anguish that she may suffer . . . in the future . . . and for any permanent injuries she may have suffered." Defendant's evidence showed positively there was no permanent injury whatever. Albin v. Railroad, 103 Mo. App. 318; Batten v. Transit Co., 102 Mo. App. 285; Bigelow v. Railroad, 48 Mo. App. 367; Caplin v. Transit Co., — Mo. App. —; Schwend v. Transit Co., 105 Mo. App. 534, 80 S. W. 40; Girdes v. Iron Co., 124 Mo. 361; Smiley v. Railroad, 160 Mo. 629. (2) Plaintiff's first instruction referring specifically to the facts in the case and purporting to present plaintiff's case to the jury, should have required the jury to find that the sidewalk in question described in the instruction, was not reasonably safe for travel at the time of the accident. Such finding is essential to plaintiff's rightful recovery.

*Hamner, Hamner & Calvin* for respondent. Filed an extended argument.

JOHNSON, J.—Action for damages resulting from personal injuries sustained by plaintiff in consequence of the negligence of defendant in maintaining in a defective and out-of-repair condition a board sidewalk on Agnes avenue between Eighteenth and Nineteenth streets in defendant city. Plaintiff, while walking thereon in May, 1900, tripped over a loose board and fell, from which she suffered various bodily injuries. The trial resulted in a judgment for her in the sum of one thousand dollars.

Defendant complains of the submission to the jury of the permanent character of the injuries received as an element of damages and asserts the evidence thereof is insufficient to support the instruction which presented that issue.

From plaintiff's evidence it appears her right collar bone was broken and in healing had failed to unite

properly.  The trial occurred in May, 1903, three years
after the accident, and at that time she was still suf-
fering a practical disablement of her right arm.  She
was then fifty years of age and in poor physical condi-
tion, being, as the physicians described her, "an
anaemic."  When upon the witness stand she was in-
terrogated by her counsel relative to existing indica-
tions of injury and said: "There is a protuberance
on the collar bone and the leaders in my shoulder are
very much shrunken.  Anyone can see it.  It lets my
shoulder droop over—that is, this shoulder droops
front instead of being straight as the other side is.
.  .  .  The leaders are all shrunken and my arm is so
weak I cannot raise it scarcely at all."  Plaintiff also
testified that she had at all times suffered much pain
and had been unable to do her work.  In all of her
statements relative to her condition, pain and suffering
and inability to use her right arm, as well as those
describing the influence produced by her injuries upon
her general health, she was corroborated by other wit-
nesses.  Two doctors also were introduced as witnesses
in her behalf.  One of them, Dr. Fulton, said in answer
to an inquiry about her collar bone: "It has been
broken right close to the shoulder joint.  There is union
there but it is not a good union.  There is unquestion-
ably a stiffness when you raise that arm.  Sometimes
we say that the patient complains of pain and that there
is no way you can tell whether there is pain or not.
This is not true of her.  There is a severe pain when
she wrenches that arm decidedly.  I wrenched it pretty
hard right now to detect whether there was any, and
what kind of union there was in that portion of the
shoulder bone.  Well, there is union, poor union, very
poor.  There is considerable ankylosis (stiffening) in
that portion of the joint.  .  .  .  The conditions are
there plainly enough."  On cross-examination: "Well,
the shoulder in this kind of a case—where you don't
get the bones exactly in apposition for some cause—

in this case the bones are overlapped—the shoulder droops forward." And on redirect examination: "If you put the ends of the bones exactly as they were when the bones were broken, exactly—if it can be done —you would expect no pain whatever. The pain is only caused by a slight dislocation—a slight elevation or depression, either sideways or any other way; that is what causes pain: by pressure on the nerve. It is sometimes pretty hard to get them in apposition. You cannot always get them in perfect apposition, but when they are in perfect apposition there is no pain. Where they are not, there is a great deal of pain."

The other expert, Dr. Jones, found the same conditions as those testified to by Dr. Fulton. He further testified as follows: Q. "Now, I will ask you if her injury, in your opinion, is permanent?" A. "Well, I think the results of the injury, in all likelihood, are permanent." It is said the word "likelihood" used by this witness falls short of including within the scope of its meaning that degree of certainty which has been held elemental to the right to recover on account of the permanency of injuries sustained. It is not required of the plaintiff to prove, nor of the jury to believe in, the absolute certainty of enduring condition or result. It is essential to show the existence of such facts as a reasonable certainty; in other words, the very highest degree of probability must appear, but to compel the plaintiff to go beyond this, would be unreasonable— and doubtless would work injustice in many cases wherein the fact of permanency, though real, cannot be ascertained with positive certitude.

"In all likelihood" should be treated as the equivalent of reasonable certainty. Both expressions describe the same degree of probability—the highest. We may add that, in the interpretation of language employed by witnesses, the main object is not to draw fine distinctions based upon accurate definitions of words, but to ascertain the real idea intended to be expressed.

Upon a careful examination of all of the testimony of this witness, no room exists even for a doubt that he intended to be understood as saying that in his opinion plaintiff's injuries are permanent.

The nature of the injuries and plaintiff's very obvious condition at the time of trial, as disclosed by her evidence, were sufficient in themselves, without the opinion of experts, to permit the jury to pass upon the question of permanency. The broken ends of the bone had failed to join, but overlapped; the shoulder drooped forward; the ligaments were shrunken; the muscles atrophied; the arm reduced in size and bereft of strength, all of this in a person fifty years old and of delicate constitution. No need to resort to conjecture or speculation in entertaining the belief that she always will have a bad shoulder and arm.

Plaintiff's fifth instruction is as follows: "If you find for the plaintiff you will assess her damages at such sum as you believe will be a just and reasonable compensation for any pain of body and mental anguish suffered by plaintiff, if any, and for any pain of body and mental angush *that she may suffer* by reason thereof in the future, if any, and for any permanent, injuries plaintiff *may have suffered* by reason thereof, if any, in all not exceeding fifteen thousand dollars."

The extent of plaintiff's injuries, the pain and suffering endured, and the future consequences to be expected, were all facts in issue under the pleadings and evidence. Defendant introduced evidence contradicting that of plaintiff upon these facts. Defendant assails the instruction quoted on the ground that both, with respect to future pain and permanent injury, it fails to confine the consideration of the jury within the limits of reasonable certainty, but permits them to revel in the field of mere probability, and even of conjecture—to award damages for purely contingent or imaginary future results. So far as this criticism is applied to the issue of permanent injury, it is without

merit. "May have suffered" is a form of the verb "to suffer" descriptive of completed action, and so far as tense is concerned is the equivalent of the past tense, indicative mode, "has suffered." This latter form of the verb may be substituted for that used without change of meaning. As permanency is a fact existing in the present, the result of completed action and independent of future happening or contingency for its continuation, it is apparent no speculative future event could be considered by the jury under the form of expression employed. A present fact was dealt with and the jury was restricted to the consideration of present conditions.

But that portion of the instruction relating to future pain is subject to serious objection. As to such damages the jury was directed to include those arising "from any pain of body and mental anguish that she may suffer." Considering the conflict in the evidence, the jury, under the instructions given, was free to reject the claim of permanent injury and yet could have found the injuries to be such that future pain would follow. Such pain not being dependent upon a permanent condition of injury is a separate and independent element of damage, and was so treated in the instruction; therefore, the language employed in submitting the issue of permanent injury can not be used to limit the license given the jury to indulge in speculation in awarding damages for future pain. Damages that *may be suffered* include those that *will result,* and far more besides—the legion, traceable perhaps to the original injury, that may spring into being as the result of unanticipated future events. The uncertainty of such happenings furnishes the reason for the rule which prohibits their consideration as an element of damage.

In Wilbur v. Railroad, not yet reported, we held: "Consequences which are contingent, speculative or merely possible are not to be considered. To justify a recovery for apprehended future consequences, there

must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury." In Schwend v. Transit Co., 105 Mo. App. 534, 80 S. W. 40, decided by our sister court, the use in an instruction of the identical words under consideration was condemned. The court said: "Pecuniary compensation is not restricted to the prospective injuries and pain and anguish which, from the evidence, will reasonably result from the injuries, but the award of damages is to be measured as well by those she may suffer in the future from the effects of such injuries. The boundary of reasonable certainty is ignored and the jury permitted under such instructions to give free rein to their respective imaginations and individual conjectures without lawful limits of reasonable certitude and probability clearly defined to guide the jury in its deliberation and finding." The case of Baker v. Independence, 93 Mo. App. 165, much relied upon by plaintiff, sustains the views herein expressed. The use of the words here employed was criticised and the instruction in which they appeared saved from condemnation only by the presence therein of other words prohibiting the consideration by the jury of future probabilities. In Albin v. Railroad, 103 Mo. App. 308, this court, speaking through Judge BROADDUS, said: "The rule is that it is not the possible or probable future pain and anguish which *may* result from injury that will justify an award of damages, but only such damages which from the evidence will reasonably result in the future." Other authorities sustaining this rule are as follows: Bigelow v. Railroad, 48 Mo. App. 367; Beasly v. Transfer Co., 148 Mo. 420; Batten v. Transit Co., 102 Mo. App. 285; Smiley v. Railroad, 160 Mo. 629; Gerdes v. Foundry Co., 124 Mo. 347; Rosenkranz v. Railroad, 108 Mo. 9; Chilton v. St. Joseph, 143 Mo. 192; Strohm v. Railroad, 96 N. Y. 306; Curtis v. Railroad, 18 N. Y. 534; Watson on damages for Per-

sonal Injuries, sec. 302, et seq.; Joyce on Damages, sec. 244.

We find no other error, but for that appearing in plaintiff's fifth instruction the judgment is reversed and the cause remanded. All concur.