[Civ. No. 336. Second Appellate District.—April 16, 1907.]

MARGARET CORDINER, a Minor, by Her Guardian ad Litem, Respondent, v. LOS ANGELES TRACTION COMPANY, and LOS ANGELES RAILWAY COMPANY, Appellants.

NEGLIGENCE—FUTURE DAMAGES RESULTING FROM INJURY—EXPERT EVIDENCE OF PHYSICIANS.—In an action for an injury resulting from negligence in order to justify a recovery for future consequences, the evidence must show with reasonable certainty that such consequence will follow. Where the injury was to the base of the brain, the testimony of experienced physicians is admissible

to show that with reasonable certainty future evil consequences will result from the injury.

ID.—COLLISION—CONCURRING NEGLIGENCE OF RAILWAY COMPANIES— RULE OF "LAST CLEAR OPPORTUNITY" INAPPLICABLE.—Where the plaintiff was injured by a collision resulting from the concurring negligence of two street railway companies, the plaintiff may recover against either or both of them, and the rule of "the last clear opportunity to avoid the injury" is inapplicable, there being no contributory negligence of the plaintiff. In such case, the plaintiff, while in pursuit of her rights against both defendants, cannot be involved in a litigation to determine the respective rights of the defendants as against each other.

APPEALS from orders of the Superior Court of Los Angeles County, denying motions for a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Harris & Harris, and Byron L. Oliver, for Los Angeles Traction Company, Appellant.

Bicknell, Gibson, Trask, Dunn & Crutcher, and Norman S. Sterry, for Los Angeles Railway Company, Appellant.

Hunsaker & Britt, for Respondent.

SHAW, J.—This is an action to recover damages for personal injuries sustained by plaintiff while lawfully riding on a street-car operated by the Los Angeles Traction Company, one of the defendants.

The Los Angeles Traction Company owned a street-car line on Sixteenth street, in Los Angeles, over which it was running its cars in carrying passengers; the Los Angeles Railway Company owned and operated a street-car line on Grand avenue, in said city.

On January 31, 1903, a collision occurred at the intersection of West Sixteenth street and South Grand avenue between the car of the Los Angeles Traction Company, on which plaintiff was a westbound passenger on said Sixteenth street, and a north-bound car of defendant Los Angeles Railway Company on said Grand avenue, which collision, it is charged, was due to the negligence and want of care of the servants

5 Cal. App.—26

of said defendants, and wherein, as a result of said collision, plaintiff was violently thrown from the car of the Los Angeles Traction Company, on which she was riding as a passenger, by reason whereof she sustained injuries, for which, upon the trial, she had judgment against defendants for damages in the sum of $5,000. Both defendants appeal from orders of the court denying their motions for a new trial. Defendants ask for a reversal, first, upon the ground of error in the admission of testimony of medical experts as to future consequences of the injury; second, in the refusal of the court to give certain instructions requested by defendant Los Angeles Railway Company.

Appellants concede plaintiff's right to recover, but contend that the amount of recovery should be limited to the loss that she was "reasonably certain" to sustain. We are in full accord with counsel's view of the law, which appears to have been embodied in an instruction, number VI, given to the jury by the trial court, wherein they were instructed: "In case you find for the plaintiff you can allow plaintiff as damages only fair and reasonable compensation for such harm or damage as flows naturally from the injury complained of, and as a natural result of the injury; and the evidence must show to a reasonable certainty, that such harm or damage has or does exist, or will result, before you can allow compensation therefor. No damages can be allowed that are merely conjectural, or flow from sympathy."

No attack is made upon this instruction, but counsel contend that the evidence of the physicians who testified as experts, over objections made by appellants, was of a character from which no certainty could be deduced, and that the testimony consisted of mere speculation and conjecture as to possible future consequences of the injury, which was calculated to, and did, influence the minds of the jury, and resulted in their rendering a verdict for a sum unsupported by the evidence, except upon the theory that plaintiff would at some future time be subjected to the conditions which might follow as a result of the injury sustained.

The evidence tended to show that plaintiff had sustained a fracture at the base of the brain, and referring to this fact and other conditions shown to exist Dr. Dukeman, a witness on behalf of plaintiff, was asked: "Would there be any danger of a relapse on the part of the patient after a consider-

able period of time during which the patient had apparently made a complete recovery?'' To which he answered: "There is some danger." And in reply to, "What is the occasion of the danger?" stated: "After a fracture there is always more or less thickening due to the reparative processes that go on in the recovery of a fracture. That thickening may produce pressure on the brain and produce various symptoms. . . . One of the main symptoms may be convulsions; may be paralysis of some form."

Referring to his answers in regard to the probability of future trouble, the witness said there would be danger of a recurrence of such symptoms as he had indicated for a period of days, weeks, months, or years. On cross-examination, the witness further stated: "I should look for more serious and fatal results from a fracture at the base of the brain than at any other place. I should look for this after apparent recovery, apparent recovery so far as anybody can tell; I would always be looking for something. . . . The doctor is frequently mistaken in the diagnosis of a case. I think he is more often correct than incorrect. . . . In the majority of cases I would look for future trouble. I can't tell what will happen in this case. My experience and knowledge as a physician has taught me that in a majority of cases of this kind, where there has been, to even the eye of a doctor, a complete recovery, convulsions or paralysis, or some other symptoms, various symptoms, would happen. I should look for convulsions in the majority of cases of that kind where there had been a complete recovery, to the eye even of a doctor."

Dr. H. G. Brainard, another physician called as a witness on behalf of plaintiff, and having reference to the condition of plaintiff after an apparent recovery, was asked: "What results are still likely, or what injury is a patient still likely to experience as a result of the injuries received?" and replied: "The condition would show that the patient had not thoroughly recovered from the effect of the injury, and we might expect from the injury the symptoms that rise frequently from a case of suffering from a fracture at the base of the brain. There is danger of convulsions or epilepsy, danger of mental deterioration, danger of paralysis."

To justify a recovery for future consequences the evidence must show with reasonable certainty that such consequences will follow. The fact that in the minds of the jurors the

disability indicated may follow, or is likely to or will probably follow as a result of the injury, will not warrant a verdict for damages. This, however, does not mean that the testimony of a witness should be excluded unless he is reasonably certain that the indicated results will follow, nor that isolated portions of his testimony should, standing alone, or considered with other evidence, extend to the degree of strength required to establish reasonable certainty as to future resulting consequences. It is the province of the jury to weigh and determine its value as proof. The evidence here tended, in an appreciable degree, to prove the ultimate fact; that is, the reasonable certainty that future evil consequences would result from the injury, and was properly admitted for the consideration of the jury—it being its function, upon a consideration of the evidence as a whole, to determine its sufficiency as proof of the ultimate fact. Its competency should not be confounded with its sufficiency; nor should the technical definition of words constitute a controlling factor in determining the question of admissibility. But, as stated in *Ballard* v. *Kansas City,* 110 Mo. App. 391, [86 S. W. 479], "the main object is not to draw fine distinctions based upon accurate definitions of words, but to ascertain the real idea expressed." (See, also, *Block* v. *Milwaukee St. Ry. Co.,* 89 Wis. 371, [46 Am. St. Rep. 849, 61 N. W. 1101].) It is often impossible to show by positive proof whether or not an impairment of health or faculties will follow as a result of injury. Hence, of necessity, in determining the question courts and juries must rely upon the testimony of properly qualified physicians for such testimony as will in the minds of the jury establish the fact in issue to a reasonable certainty. Such evidence must be clearly distinguished from conjecture, or that which merely establishes a possibility of future trouble. As a rule, the physician whose opinion is most reliable is loath to give an opinion as to what consequences will or will not follow as a result of an injury in a certain case, but at the same time willing, as here, to state the result of his own professional experience and observations in treating cases where like injuries have occurred, and as a result of that experience say that we might or might not expect like results to follow in this case. Testimony of duly qualified experts which shows that in a majority of cases where the injury consists of a fracture at the base of the brain, such injury results in future epilepsy,

paralysis, or mental deterioration, tends to prove the reasonable certainty that such consequences will follow in any given case of like injury.

In this view considered, the evidence, while it may not have been by the jury considered sufficient proof, nevertheless tended to establish to a reasonable certainty that, notwithstanding the apparent recovery of the plaintiff, she would in the future suffer from the effects of the injury.

Dr. Dukeman testified that there was some danger of a relapse, and gave his reasons for so stating. That after apparent recovery he should look for serious results; that in the majority of such cases he would look for future trouble; that in a majority of such cases where there was an apparent complete recovery to the eye of a doctor, convulsions, paralysis, or other conditions of disease, followed as a result of the injury; that he should look for convulsions in a majority of such cases.

Dr. Brainard testified that epilepsy and mental deterioration might be *expected* to follow (not that they *might* follow), and that there was danger of such conditions.

In *Peterson* v. *Chicago etc. Ry. Co.*, 38 Minn. 511, [39 N. W. 485], and *Nichols* v. *Brabazon*, 94 Wis. 549, [69 N. W. 342], the court held that questions which called for the opinion of the witness as to the probability of the patient recovering were not subject to the objection made here, the court in the latter case observing: "Certainly, the effect of the whole testimony must be to establish a reasonable certainty that the effects of the injury will be suffered in the future."

In *Block* v. *Milwaukee St. Ry. Co.*, 89 Wis. 371, [46 Am. St. Rep. 849, 61 N. W. 1101], a question asked as to the reasonable probability of the ultimate recovery was sustained, the court saying: "While it is true that the whole testimony must establish, in the minds of the jury, more than a mere 'reasonable probability,' and must amount to proof to a 'reasonable certainty,' this ultimate fact is susceptible of proof by items of testimony which do not, separately, fully establish it." (*Mitchell* v. *Tacoma Ry. & M. Co.*, 13 Wash. 560, [43 Pac. 528]; *Ballard* v. *Kansas City*, 110 Mo. App. 391, [86 S. W. 479]; *Peterson* v. *Chicago etc. Ry. Co.*, 38 Minn. 511, [39 N. W. 485]; *Filer* v. *New York Cent. Ry. Co.*, 49 N. Y. 42; *Hallum* v. *Village of Omro*, 122 Wis. 337, [99 N. W. 1051].)

We have carefully examined the great number of authorities submitted by counsel for appellants. Many of them relate to the form of instructions given for the guidance of the jury where damages for future results of injuries were sought. Others are clearly distinguishable from the case at bar. In *Lentz* v. *Dallas,* 96 Tex. 258, [72 S. W. 59], an objection was sustained to an abstract question upon the ground that it was not confined to the probable effects of the injury. *Yaeger* v. *Ry. Co.,* [Cal.] 51 Pac. 190, falls within the same rule. The case of *Strohm* v. *R. R. Co.,* 96 N. Y. 305, has been frequently cited in support of the proposition that consequences which are contingent, speculative or merely possible are not proper to be considered in ascertaining the amount of damages sustained by reason of personal injuries. In that case the court recognizes the rule that "to entitle a plaintiff to recover present damages for apprehended future consequences there must be such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury." In the Strohm case the questions and answers upon which the court based its ruling were: "You said it (the injury) might develop into worse signs or conditions? What do you refer to?" To which the witness answered: "A patient . . . *may* develop," etc. Both question and answer related to what conditions *might* develop, not to conditions that might be *expected* to develop, as a result.

Neither of the defendants questioned the right of plaintiff to recover such damages as she had sustained in the collision, but each contended that the other should be held responsible therefor, and with the view of having the jury pass upon the question, the Los Angeles Railway Company asked the court to instruct the jury, in effect, that notwithstanding the negligence of its motorman in driving his car upon the crossing, still if the traction motorman could, after he saw that it was beyond the power of the motorman of the Los Angeles Railway car to avoid the accident, have, by proper care, prevented the collision, then in the negligence of the defendant Los Angeles Traction Company was the proximate cause of the injury. In other words, while admitting that plaintiff's injury resulted from the collision due to the joint or concurrent acts of negligence of defendants, she must be confined in her recovery for such damages to a judgment rendered

against the defendant who had the "last clear chance" to avoid the collision and neglected to act upon it. Appellant seeks to apply the well-established principle that "he who last has a clear opportunity of avoiding the accident, by the exercise of proper care to avoid injuring another, must do so." (*Esrey* v. *Southern Pacific Co.,* 103 Cal. 541, [37 Pac. 500].) This rule is only applicable to cases where the defense is based upon the contributory negligence of plaintiff due to his want of care in placing himself in a position of danger, and where he may, notwithstanding his negligence, recover from a defendant, who by the exercise of proper care could have avoided the injury. We are unable to perceive why this rule should apply to plaintiff, who was in no way chargeable, by imputation or otherwise, with negligence; nor are we referred to any authority which supports the proposition. Indeed, all the authorities recognize the right of recovery against either or both of the defendants whose concurring acts of negligence united in producing the injury. (1 Shearman and Redfield on Negligence, p. 122; 1 Thompson on Negligence, p. 75; *Doeg* v. *Cook,* 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707]; *Tompkins* v. *Clay St. Ry. Co.,* 66 Cal. 163, [4 Pac. 1165]; *Pastene* v. *Adams,* 49 Cal. 87.)

Plaintiff, having a right to recover against either or both defendants, could not, while in pursuit of her rights, be involved in a litigation having for its purpose the determination of questions involving the respective rights of defendants as against each other.

It follows that the orders appealed from must be affirmed, and it is so ordered.

Allen, P. J., and Taggart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 16, 1907, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1907.