[Civ. No. 7535.   Third Dist.   Mar. 30, 1949.]

RAYMOND POTTER et al., Respondents, v. EMPRESS THEATRE COMPANY (a Corporation) et al., Appellants.

[Civ. No. 7536.   Third Dist.   Mar. 30, 1949.]

JOSEPH BRADY, Respondent, v. EMPRESS THEATRE COMPANY (a Corporation) et al., Appellants.

Gerald M. Desmond, Jerome M. McLaughlin, Johnson, Ware & Davies and William A. Sitton for Appellants.

Albert E. Sheets, Carl Kuchman and Robert H. Schwab for Respondents.

ADAMS, P. J.—This is an appeal from a judgment in two cases which were filed separately, but consolidated for trial. The one action was brought by Joseph Brady for personal injuries sustained by him when the marquee overhanging the public sidewalk in front of the Hippodrome Theatre on K Street between 10th and 11th Streets in Sacramento fell upon him. The other action was brought by J. D. Wood, Mrs. J. D. Wood, his wife, and Raymond Potter, as heirs of Shirley Potter who was killed in the same accident. Defendants named in both actions were the Empress Theatre Company, a corporation, the Sacramento Hippodrome Theatre Company, Incorporated, a corporation, West Coast Theatres, Incorporated, of Northern California, a corporation, Fox West Coast Theatres Corporation, a corporation, Physicians Building Company, a corporation, and Sidney Osborn Mackey, William Alden Campbell and John Liddicoat, copartners doing business as Campbell Construction Company. Nonsuits

were granted as to defendant West Coast Theatres, Incorporated, of Northern California, but verdicts for plaintiffs were returned against the other defendants all of whom have appealed.

The evidence shows, without serious dispute, that on June 17, 1912, the Physicians Building Company owned Lots 8 and 7 situated on the north side of K Street, Lot 8 being situated on the northeast corner of K Street and 10th Street, and Lot 7 adjoining Lot 8, on the east side thereof. On that date the Physicians Building Company leased Lot 7 to defendant Empress Theatre Company. Said lease was thereafter extended, same still being in effect on September 14, 1946, the date of the accident. Empress Theatre Company had, in the meantime, subleased to various sublessees who had improved Lot 7 so that, on September 14, 1946, it was occupied by three structures fronting on K Street, consisting of an unoccupied store on the west formerly occupied by the Sutter Candy Store, on the east side by a corset shop, and between the two, the tunnel entrance to the Hippodrome Theatre, above which was a tower. Lot 8 was occupied by what was known as the Physicians Building, belonging to defendant Physicians Building Company, a six-story brick building, the east wall of which constituted the west wall of the Sutter Candy Store.

The marquee, which extended across the front of the three structures on Lot 7 and out over the sidewalk, was constructed some 25 or 30 years before the accident, by tenants under the Empress Theatre Company, with its consent. It was 48 feet long, 10 feet wide, was variously estimated to weigh from 5,400 to 6,500 pounds, and was about 12 feet above the sidewalk. Above its jointure with the one-story candy store building was a brick wall some 5 feet, 4 inches in height which was set upon a lintel composed of two 10-inch eyebeams bound together, the west end of this lintel being supported by a U-shaped steel strap hanger which passed under the eyebeams. The arms of the U-shaped strap hanger extended upward, and the ends thereof, bent at a 90-degree angle, were encased in the east wall of the Physicians Building where they extended over a concrete spandrel beam in that building, which beam was situated at the top of the first story thereof, the bent ends of the strap hanger being held in place by the weight of the brick wall of the Physicians Building, which extended five stories above them. The outer edge of the marquee was supported by four chains, equally spaced. The

one on the west end was attached at one end to the outer corner of the marquee, and at the other it was fastened to the wall of the Physicians Building by means of steel straps attached to the wall by a bolt passing through it, and an expansion bolt which passed partially through the wall. The other three chains were attached to the outer edge of the marquee and to the wall back of it.

On February 15, 1946, the Physicians Building Company, owner of the Physicians Building, desiring to remodel same to make it into a store building, entered into a contract with defendant Campbell Construction Company to tear out the offices therein. This demolition work was started in February, 1946, but on June 27th the plans were changed, and the construction company was authorized to demolish the exterior brick walls down to a spandrel beam located at approximately the top of the first or ground floor, and to replace the brick walls above that level with reinforced concrete.

Demolition of these brick walls was completed on August 12, 1946, and the bricks removed down to the spandrel beam upon which they had rested, and below the point where the chain supporting the west end of the marquee was attached. This chain had been thrown down upon the top of the marquee which was thus deprived of the support which it had derived therefrom. Also, the ends of the U-shaped strap hanger where they had extended over the spandrel beam had not only been deprived of the weight of the brick wall which had held them in place, but one of such ends had been left entirely in the air by reason of the chipping off of the portion of the beam upon which it had rested.

During the 32 days which elapsed between the conclusion of the demolition work and the date of the accident the eye-beams sustaining the wall above the portion thereof in front of the candy store had rotated slightly, and the west end of the marquee had sagged to some extent. The result was that on September 14th a portion of the brick wall above the west end of the marquee, weighing about 5,000 pounds, fell outward upon the marquee, the three chains which then furnished its sole support were broken, and the outer edge of the marquee fell like a trap door upon Mr. Brady and Mrs. Potter, pedestrians on the sidewalk beneath it.

On this appeal all of the theatre companies join in one brief; and they concede that if the judgment is affirmed it shall be affirmed as to all of them, a stipulation to the same effect

having been entered into in the trial court. They contend, however, that they are not liable, and that the responsibility should rest upon the construction company. The latter company has joined the Physicians Building Company in one brief, but no real defense is therein made in behalf of the construction company.

We think that their liability is amply shown by the evidence, and no further consideration need be given to their appeal.

As for the liability of the Physicians Building Company, as the owner of Lot 8 and the building under reconstruction, it is argued that it is not charged as owner of the Lot 7, and that as for the work done by the construction company on Lot 8, the latter was an independent contractor, and that there is no evidence that the Physicians Building Company was in any way careless or negligent in its selection of the construction company, or that the latter was in any degree incompetent to perform the work for which it was employed under its contract. They quote from 39 Corpus Juris, page 1324, to the effect that as a general rule a contractee is not liable for the acts or omissions of a contractor or his servants, and that the general rule deducible from the decisions and the one now universally recognized is that, where the relation of an independent contract exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not in itself a nuisance, nor will necessarily result in a nuisance if proper precautionary measures are used, and an injury to a third person results, not from the fact that the work is done, but from the wrongful or negligent manner of doing it by a contractor or his servants, the contractee is not liable therefor. They urge that there is no evidence that the Physicians Building Company ever had actual knowledge of the manner in which the west end of the marquee was supported; or that the theatre companies had been given the right to so support it by affixing its supports to the wall of the Physicians Building; or that the Physicians Building Company ever assumed the duty of affording support to the end of the marquee; or that any demand was ever made by the theatre companies upon the Physicians Building Company to support the end of the marquee, or that, after the demolition work had been done, that company replace the supports removed by the construction company. They also assert that the negligence of the construction company cannot be imputed to the Physicians Building Company since the construction company was an independent contractor.

Respondents reply that regardless of the status of the construction company as an independent contractor, the owner should be held liable for its own negligence in maintaining its premises in a condition of disrepair which was a hazard to persons using the public sidewalk, and that such owner is answerable in damages if it knew of the condition of disrepair, or, in the exercise of reasonable care and prudence it should have known of it in time to take measures against it.

We note that the trial court instructed the jury as follows:

''If in the course of the demolition or construction work upon Lot 8 a condition was created on Lot 8 which máde the marquee unsafe for pedestrians upon the public sidewalk, and the defendant Physicians Building Corporation, through its officers, or agents, knew of this condition or by the exercise of ordinary care under the circumstances should have known of it, then it was the duty of defendant Physicians Building Company as the owner and in possession of Lot 8 to take such precautions for the safety of pedestrians upon the public sidewalk as an ordinarily prudent person would do under the circumstances.''

Also:

''Notwithstanding the relationship of independent contractor which existed between the defendant Campbell Construction Company and the defendant Physicians Building Company, if the defendant Physicians Building Company ordered or directed the defendant Campbell Construction Company to do any act which the defendant Physicians Building Company knew, or by the exercise of ordinary care under the circumstances should have known, involved an unreasonable risk of harm to pedestrians upon the public sidewalk, and thereafter defendant Campbell Construction Company carried out such order or direction, and as a proximate result thereof the plaintiff Joseph Brady was injured and Mrs. Shirley Potter, the deceased, was killed, then in that event the defendant Physicians Building Company and the defendant Campbell Construction Company are equally liable for the damages, if any, proximately resulting therefrom.''

No exception was taken to those instructions, nor, on this appeal, are any of the instructions assailed as erroneous.

▆▆ Under the foregoing instructions and the evidence the jury were justified in holding the owner of the Physicians Building liable if they found that it knew, or by the exercise of ordinary care under the circumstances should have known,

of the condition created by the construction company which resulted in the accident. Thus a question of fact was submitted to the jury for its determination, and by the verdict it answered it in favor of plaintiffs. The only matter then left for the determination of this court is whether there is sufficient evidence to support that conclusion. We cannot say that it does not find support. The record shows that the owner employed an architect, Harry J. Devine, to exercise supervision over the work of the construction company, and, by the contract with that company, Devine was to prepare the plans and specifications for the remodeled building, the construction company was to be guided by and follow the instructions of the architect, and the latter was at liberty at any time to order any extra work or make any changes, and the entire work was subject to inspection and approval by the owner. This architect was not called as a witness, and the only testimony in behalf of the owner was that of its secretary, A. I. Diepenbrock, who observed the progress of the work only as he walked by from time to time.

George E. Goodall, a qualified structural engineer, testified that he examined the marquee shortly after it fell, and thereafter. He described the marquee and the manner in which it was constructed and sustained, the conditions after the brick walls of the Physicians Building had been removed, and he also testified that from a picture taken after such removal, and three days before the accident, he could definitely tell that the brick parapet above the candy store was about to fall because of the removal of support of the U-shaped strap hanger, which had caused it to tip forward. He stated that during the 32 days preceding the fall of the marquee the results which followed the removal of the wall of the Physicians Building would have been plainly visible to anyone who had looked; and that four timber shores would have completely prevented the collapse of the marquee. It may, then, have been concluded by the jury that the architect employed by the owner of the building must have, or, at least, should have seen the inevitable result of the removal of the support of the west end of the marquee and the support of eyebeams which supported the brick wall above the front of the candy store.

Respondents also urge that the Physicians Building Company is chargeable with negligence because its contract with the construction company contained no provision requiring precautions, citing sections 413 and 416 of Restatement of the

Law of Torts, pages 1118, 1130, to the effect that one who employs an independent contractor to do work which he should recognize as necessarily creating conditions containing an unreasonable risk of harm to others unless special precautions are taken, is subject to liability if he fails to provide in his contract that the contractor shall take such precautions, or fails to exercise reasonable care to provide in some other manner for the taking of such precautions. (Referring to comment, on page 1119, for a comparable situation.)

While the evidence is not strong upon the liability of the Physicians Building Company, we cannot say that there was no evidence, nor any inferences to be drawn from evidence, to uphold the verdict of the jury. That company and the theatre companies made motions for judgments notwithstanding the verdicts, which motions the trial court denied, thus evidencing its opinion that there was evidence sufficient to sustain the conclusions of the jury.

As for the liability of the theatre companies, they make no complaint about the instructions given, one of which was:

"Where a part of a building is leased the lease carries with it, as an incident thereto, everything then in use for the part of the building leased, and thereafter the tenant in possession and control of the part of the building and what passed to him as an incident of the lease has a duty to exercise ordinary care to keep the same in safe condition for pedestrians upon the adjacent public sidewalk.

"The duty to use ordinary care to maintain the marquee in a safe condition for pedestrians upon the public sidewalk was an affirmative duty. It required the party or parties defendant, upon whom it rested if any to inspect the marquee and its supports, to ascertain their condition as often as an ordinarily prudent person would do under the circumstances, and to make such repairs or take such precautions as an ordinarily prudent person would do under the circumstances to keep the marquee in a safe condition for pedestrians upon the public sidewalk."

The evidence is ample to justify the implication of the jury's verdict that the theatre companies did not use ordinary care to maintain the marquee in a safe condition, and that they knew, or in the exercise of reasonable care should have known, that the support for the marquee had been impaired as had the support of the brick wall above the candy store; yet they did nothing at any time to protect the structures

which they, themselves, had erected and were charged with maintaining. They are chargeable with knowledge as to how the U-shaped strap hangers and the westerly chain were affixed to the Physicians Building, and must have known of the removal of the wall holding the strap hangers in place, and that such removal would release them; and during the 32 days that elapsed after they were released and before the accident, these appellants apparently made no effort to ascertain the conditions created, or to remedy them. Section 364 of the Restatement of the Law of Torts is applicable. There it is stated:

"A possessor of land is subject to liability for bodily harm caused to others outside the land by a structure or other artificial condition thereon, which the possessor realizes or should realize as involving an unreasonable risk of such harm, if

"(a) the possessor has created the condition, or

. . . . . . . . . . . . . .

"(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

Mr. Lyons, president and general manager of Empress Theatre Company, testified that he made inspections of the premises 10 or 12 times a year; and his testimony shows that he knew of the demolition work being done on the Physicians Building, and he knew that the marquee was anchored in the wall of that building, but never inspected it. Mr. Wasserman, manager of several theaters, including the Hippodrome, admitted that he had observed the demolition of the Physicians Building from the start; that he had never inspected the marquee to ascertain its safety. Mr. Enwald, manager of the Hippodrome at the time of the accident, stated his only outside inspection had been as to lights, but admitted that several times he had been on top of the marquee to hang a banner which was flown from near the top of the tower, its lower ends being attached to the chains which supported the marquee. He knew of the demolition of the Physicians Building and should have observed that the west end chain was down and lying on the marquee after it had been thrown there by the construction company; and had he looked up he would have seen the ends of the strap hanger deprived of their support. Obviously, then, the theatre companies, if they did not actually know of the dangerous condition that obtained for the 32

days prior to the accident, are chargeable with constructive knowledge, and with failure to exercise reasonable care.

██ The construction company, as appellant, urges finally that the awards of damages are excessive. The record shows that the jury returned a verdict awarding $50,000 to plaintiffs Potter, et al., and $50,000 to plaintiff Brady. However, on motions for a new trial, the former was reduced to $40,000 and the latter to $30,000, and plaintiffs accepted the reductions.

Regarding the award as applicable to Mr. and Mrs. Wood, the parents of decedent, appellants say that there was no evidence that they were dependent upon their daughter, or ever had been or ever would be; and that the probabilities are that Mr. Potter, the surviving husband, will remarry; that under section 377 of the Code of Civil Procedure those plaintiffs are entitled to recover only for the *pecuniary* loss sustained by them, which could not amount to $40,000.

Respondents reply by pointing out the present devalued condition of the dollar, citing *Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 187 [195 P.2d 427], in which a verdict for personal injuries amounting to $60,000 was sustained; and *Brown* v. *Boehm*, 78 Cal.App.2d 595, 603 [178 P.2d 49], in which an award of $25,000 to the surviving widow and five adult children of a decedent was affirmed. Those cases also hold that the allowance of damages is primarily a factual matter, and even where an award may seem large to a reviewing court, it will not interfere unless the allowance is so grossly disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice. Also, it is pointed out in the latter case that the remedy for excessive verdicts is practically committed to the judge who presides at the trial, and numerous decisions to that effect are cited. Also, see, *Holder* v. *Key System*, 88 Cal.App.2d 925, 940 [200 P.2d 98] (hearing in Supreme Court denied), and *Buswell* v. *City and County of San Francisco*, 89 Cal.App.2d 123, 126 [200 P.2d 115] (hearing in Supreme Court denied).

The evidence shows that Mrs. Potter, who was about 42 years old, was highly accomplished, earned about $3,250 each year by her various activities, and, besides doing her own housework, actively assisted her husband, aged 43 years, in his business affairs, kept his books, and helped him to design houses which he was building. They had been married 18

years. Apparently the relation between decedent and plaintiffs was a close and affectionate one.

█ As for the award to respondent Brady, while the evidence was conflicting as to whether his injuries were of a permanent nature, there can be no question that they were severe; and there was medical testimony that because of injury to his brain there was "a good possibility" that convulsions and epilepsy might develop later. Compare *Cordiner* v. *Los Angeles Traction Co.*, 5 Cal.App. 400 [91 P. 436], *Oliveira* v. *Warren*, 24 Cal.App.2d 712, 715 [76 P.2d 113], *Ostertag* v. *Bethlehem etc. Corp.*, 65 Cal.App.2d 795, 807 [151 P.2d 647], and *Bauman* v. *San Francisco*, 42 Cal.App.2d 144, 163-165 [108 P.2d 989]. Brady was 46 years old, earned $50 net a week, and had a wife and one child of his own, while his wife had three children from a former marriage. There is testimony that his health had been good before the accident and he had been able to do heavy work as a truck driver employed by the Pacific Transfer Company, which work he is now unable to perform. He has grinding pains in his head, staggers when walking, cannot concentrate, has lost his hearing in his right ear and his sense of smell, and his left arm (he is left-handed) is practically useless.

As for both awards, reduced as they were by the able trial judge who tried the cases, we are not convinced that they are excessive in view of the evidence, particularly since the trial judge who saw the witnesses and heard their testimony has concluded what they should be. We cannot say that they are so grossly disproportionate to sums reasonably warranted by the facts as to shock the sense of justice and raise a presumption that they are the result of passion and prejudice.

The judgment for the reduced amounts are affirmed, as is the order denying the motion of the theatre companies for judgment notwithstanding the verdict.

Peek, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 26, 1949.