Edward D. SASLOW and Marjorie Brann, Appellants,

v.

Thomas J. REXFORD, Appellee.

Thomas J. REXFORD, Appellant,

v.

Edward D. SASLOW and Marjorie Brann, Appellees.

Nos. 369, 380.

Supreme Court of Alaska.

Aug. 27, 1964.

8. See 2 Moore, Federal Practice § 12.08, at 2245 (2d ed. 1964), and the cases there cited.

Mary Alice Miller (of Collins & Clasby), Fairbanks, for Edward D. Saslow.

Robert A. Parrish (by Millard F. Ingraham and Karl L. Walter, Jr.), Fairbanks, for Thomas J. Rexford.

No appearance for Marjorie Brann.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is a tort action in which the plaintiff was struck by the automobile of one of the defendants and seeks to recover damages for the injuries received.

On September 20, 1961, the plaintiff, Thomas J. Rexford, age forty-one years,

was injured near Clear, Alaska. The entrance gate to the BMEWS [1] Site at Clear is located about a mile westward of the Nenana-Rex Road and is reached by an access road from the Nenana-Rex Road. The access road is intersected about one-fourth mile from the gate to the site by the tracks of the Alaska Railroad which is owned and operated by the United States. The intersection is not quite at right angles to the access road, the latter being generally east-west and the tracks lying in a direction about thirty degrees east of north and west of south.

A train had stopped at this intersection a few minutes before the accident to unload passengers and parcels west of the tracks and north of the access road. Three motor vehicles were concerned in the accident. One was a green panel truck parked in a dirt side road or driveway which ran along the westerly side of the railroad track and led 150 feet to a derailed baggage car being used as a railroad waiting room. The panel truck was parked parallel to the railroad tracks and was placed there to receive mail from the train. The second vehicle was a pickup truck of the defendant Brann, parked facing easterly within the north side of the access road—the wrong side of the road for the pickup. This pickup had its headlights on but there is a conflict in the testimony as to whether they were on bright or dim. There were no flares or fusees set out to warn oncoming traffic of the pickup's position. The third vehicle was the Volkswagon sedan of the defendant Saslow, traveling on the access road westward to the BMEWS site. [Infra.]

The access road had a gravel surface and was about thirty feet wide, inclusive of the shoulders. The left or northerly side of Brann's pickup was three to four feet south of a berm in the main portion of the road. Both the road and the railroad bed were built up by fill gravel, and there were embankments off the side of the road and the railroad bed. The berm left by the road

grader was two and one-half to three feet inside the edge of the road.

The panel truck was waiting for the Brann pickup, which was blocking the driveway, to be moved, and the defendant Brann was loading her parcels into the pickup. She had dropped her flashlight into the bed of her pickup, and the plaintiff Rexford had retrieved it for her. He was walking away from the pickup toward the panel truck when the defendant Saslow's car collided with him. Although Rexford testified that he was walking in the railroad parking area when struck by Saslow's car, another witness, Janey, placed him in the road or on the shoulder of the road at the time of impact. This parking area was too narrow for more than one car to be comfortably accommodated, but it was quite long, extending back 150 to 200 feet to the waiting room. The rear end of the panel truck was six to ten feet from the edge of the road.

Rexford saw the defendant's car approaching at a distance of about 500 feet and again at a distance of about 100 feet, and thought Saslow intended to stop at the intersection to park. Rexford knew the position of the Brann truck in the road and he knew its headlights were on. He was familiar with the railroad intersection and had ridden the train there many times.

The intersection was unlighted, and the railroad waiting room was unlighted. There was no railroad crossing sign on Saslow's right as he approached the tracks from the east, nor any stop sign or light. There was a railroad crossing sign on the opposite side of the road, about forty feet beyond the tracks, and there was a "no parking" sign about fifty feet beyond the tracks on Saslow's right side of the road.

It was a dark night with light rain or drizzle. Defendant Saslow thought the Brann truck was moving until he got beyond the beam of its headlights. When approximately fifty feet in front of the Brann truck, Saslow turned his car to the right to avoid a headon collision. Saslow's car made a

---

1. The letters BMEWS stand for the words Ballistic Missile Early Warning System.

small dent in the open left door of the Brann truck and the front left portion of Saslow's car struck Rexford. Apparently, Mrs. Brann was also injured.

Both bones of Rexford's lower right leg were broken between the knee and ankle, and his wrist was sprained. He was hospitalized for about two and one-half months, wore a cast on his leg for about seven months, and a unna's boot for another month. He received special training and treatments for three months in Louisiana. Motion in his right ankle was somewhat limited, his right leg measured one-half inch shorter than the left, and he had compensating scoliosis.

On February 8, 1962, Rexford commenced suit against Saslow and Brann, the owner of the pickup truck, charging them with negligence and claiming damages for his injuries in the sum of $100,000. This amount was amended at the pretrial conference to $150,000. The jury returned a verdict of $70,430.20 against both defendants and judgment was entered on this verdict on February 21, 1963.

A memorandum opinion of April 4, 1963, reduced the attorney's fees as against Saslow from $7,893 to $3,500. Of the defendants, Saslow alone appealed from the judgment. Rexford cross-appealed the order altering judgment in regard to attorney's fees. This court ordered the two cases (Nos. 369 and 380) consolidated for hearing on appeal.

At the trial the defendant called as one of his witnesses Winston Allen, an employee of the Alaska Railroad. The witness refused to testify regarding any of the details of the accident, apparently claiming privilege under section 2.20 of title 43 of the Code of Federal Regulations.[2] He did, however, answer, when questioned, that he was aware that the plaintiff had commenced a suit against the United States or the Railroad[3] as a result of the accident in question. The plaintiff moved to strike the answer and the motion was granted, with instructions to the jury to disregard the answer. The court and all counsel then had a conference on the matter outside the presence of the jury, and it was agreed that the question and answer would be allowed. At the same time the trial judge stated that he thought it would be prejudicial to admit in evidence the plaintiff's complaint against the United States. Subsequently, when the complaint was offered in evidence by Saslow, the trial court sustained the objection of the plaintiff to its admission on the grounds that it was prejudicial and immaterial.

The defendant Saslow now claims that it was reversible error for the trial court to strike the witness Allen's answer and to refuse to admit in evidence the complaint against the Government. He argues that the evidence should have remained before the jury to show bias, prejudice or interest of the witness. To this the plaintiff responds that because a party can ask a witness whether a lawsuit has been commenced against his employer does not imply that a copy of the complaint in that action may be introduced into evidence.

2. Title 43 of Code of Federal Regulations in subsection (a) of section 2.20 provides as follows: "An officer or employee of the Department [of the Interior] shall not testify in any judicial or administrative proceeding concerning matters related to the business of the Government or the contents of official records without written permission of the head of the bureau or office, or his designee, or of the Secretary. If the head of a bureau or office, or his designee, concludes that permission should be withheld, he shall report the matter immediately to the Secretary for a determination and the officer or employee shall appear in answer to process and respectfully decline to testify, pending the receipt of instructions from the Secretary, on the ground that the testimony is prohibited by this part."

3. The complaint in the suit mentioned in the text above is actually entitled "In the United States District Court for the District of Alaska at Fairbanks—Thomas J. Rexford, Plaintiff, vs. United States of America, Defendant. No. F 26–62 Civ. Complaint."

We believe that when Allen testified that his employer was also being sued by the plaintiff as a result of the accident of September 20, 1961, the defendant Saslow had made his point that there was an inference of bias and prejudice in any testimony that might be elicited from Allen. It rested then within the fair discretion of the trial court to exclude any other evidence in the matter such as the written complaint itself. That document in addition to merely corroborating the witness' testimony would have revealed the amount of damages claimed and also the theory of the plaintiff's case against the United States. The jury might then have interpreted the suit against the United States as an admission by the plaintiff that the United States and its agency the Alaska Railroad were the real parties at fault; or it might have decided that, since the plaintiff was going to recover damages against the Government, its own award of damages to him should be reduced accordingly.

The manifest prejudice which would have resulted from admitting the complaint in evidence would have outweighed any use of the complaint for further impeachment purposes. Therefore, we conclude that the trial judge did not abuse his discretion in excluding the complaint.[4] He was in a far better position than we are to assess the prejudicial effect the complaint might have had upon the jury.

We attach no weight to the defendant Saslow's claim that it was reversible error to strike Allen's answer that he was aware of the suit commenced by the plaintiff against the United States. After the agreement of plaintiff's counsel that the question might be asked again, Saslow, if he wished, was free to ask the question again. This he failed to do. It was not incumbent upon the court to reverse its ruling and take the initiative in telling the jury that they could consider the testimony which had been stricken earlier. It might have been that, at the time, Saslow did not consider the matter of enough importance to reask the question. He should not be heard now to complain.

We turn next to Saslow's claim that the trial court erred in refusing to give the jury his (Saslow's) requested instruction on contributory negligence and in instructing the jury instead that contributory negligence was not an issue in the case.[5] On this point we have carefully examined the pertinent testimony and the photographic and diagramatic exhibits in the record and have concluded that the court erred in taking from the jury the question of contributory negligence.

Rexford, the plaintiff, saw the Saslow car twice before it struck him—the first time at a distance of about 500 feet as he went over to help the defendant, Marjorie Brann, retrieve her flashlight from the bed of her pickup truck, and the second time at a distance of about 100 feet. He perceived that the pickup was parked on the wrong side of the road with its headlights on, that night darkness prevailed, and that there were no warning flares set out. He was familiar with the area, having worked at the Clear

---

4. See Houser v. Heider, 221 Or. 7, 350 P. 2d 422, 429–30 (1960); McCarty v. Hedges, 212 Or. 497, 321 P.2d 285, 291–92 (1958), holding that while the defendant could ask the witness if he were suing the defendant for injuries arising out of the action which was the subject of the litigation, the trial judge was within his discretion in prohibiting inquiry into the amount of the damages claimed. See also Annot., 74 A.L.R. 1157 (1931), which states at 1158: "In general, the fact of a relationship or circumstance from which hostility may reasonable be inferred may be shown, but not its details."

5. The instruction given by the court regarding the issue of contributory negligence reads as follows: "You are instructed that there is no issue as to the defense of contributory negligence or stated alternatively, there is no issue as to any negligence or lack of care on the part of the plaintiff Thomas Rexford as the Court has determined as a matter of law that this issue is not for the jury's consideration. * * *"

site off and on over a period of several years. As he saw the Saslow car approaching he had the impression that it was traveling too fast for what he described as a congested area. There is a conflict in the testimony whether he was on the berm at the side of the access road or in the parking area (railroad siding) when he was struck.[6]

■ Contributory negligence has been defined as consisting of "conduct which involves an undue risk of harm to the person who sustains it." It is one's failure to exercise reasonable prudence for his own safety when he perceives danger to himself created by another's negligence.[7] We feel that it is open to question whether the plaintiff was not guilty of contributory negligence in placing himself in such close proximity to the Brann car under the attendant dangerous circumstances. Under the facts of this case it cannot be said that there was no room for an honest difference of opinion as to whether the plaintiff was innocent of contributory negligence.[8] The issue should have gone to the jury.

Another of the trial court's instructions here under attack by the defendant is Number 30 which directed the jury:

> If you find that the plaintiff is entitled to a verdict and you find from the evidence that plaintiff's power to earn money has been so impaired by the injuries in question that he will suffer a pecuniary loss in the future (that is from the date of this trial) from such impairment, then you will award him such sum as will reasonably compensate him for any future

detriment as he is *reasonably certain* to suffer.

> In fixing this amount, you may consider what the plaintiff's health, physical ability and earning power were before the accident and what they are now, the nature and extent of his injuries, whether or not they are reasonably certain to be permanent, or if not permanent, the extent of their duration, the *possibilities* of diminution of earning capacity, all to the end of determining the effect of his injuries upon his future earning capacity and the present value of any loss so suffered. [Emphasis added.]

The defendant contends that this instruction improperly permitted the jury to award damages on the *mere possibility* of decreased earning capacity as opposed to the traditional *probability* and *reasonable certainty* tests. The plaintiff counters with the argument that the first paragraph adequately instructs the jury that any award granted must be based upon reasonable certainty, but that in arriving at this amount, one factor which the jury may consider is the possibility of decreased earning capacity.

■ The plaintiff's argument has merit and there is authority that testimony on possibility is admissible as where a doctor says that he would look for future trouble, although he cannot say with reasonable certainty that a certain condition will result. The testimony on possibility is admissible on the basis that all cumulative testimony in the case tends to show with reasonable cer-

6. The witness Janey testified concerning the position of the plaintiff at the time he was injured as follows: "No doubt he [the plaintiff] was in the road—the main road—not on the [railroad] siding. * * * "

7. Restatement, Torts § 463 at 1227 and § 466 at 1235 (1934). See also this court's views on the kind of conduct which constitutes contributory negligence as set forth in City of Anchorage v. Steward, 374 P.2d 737, 738 (Alaska 1962) and Van Reenan v. Golden Valley Elec. Ass'n, Inc., 379 P.2d 958, 962 (Alaska 1963).

8. Salomon v. Meyer, 1 Cal.2d 11, 32 P.2d 631, 633 (1934); see also Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937), in which the court stated at 66 P.2d 256–257, citing 45 C.J. 1305: "In most jurisdictions when the facts are not in dispute, and the court is of the opinion that but one inference can be drawn from them as to the duty of a reasonable man under the circumstances, the question of whether those facts constitute contributory negligence is a matter of law for the court, and not one of fact for the jury."

tainty the consequences that will follow a given injury.[9]

In the California case of Potter v. Empress Theatre Co.,[10] there was testimony that there was a "good possibility" that convulsions and epilepsy would follow the injury. This testimony was not held to be inadmissible. The case is cited by the plaintiff who urges that a "good possibility" is the same as a "probability." [11]

In Bauman v. City & County of San Francisco,[12] the court pointed out that testimony can be admissible even though the doctor will not say that certain results are "reasonably certain" to occur, but that "Before the jury may allow a recovery for future consequences the evidence must show with reasonable certainty that such consequences will follow, and *the jury should be so instructed.*" [13] [Emphasis added.]

While instruction No. 30 is not expressed in the most artful of language, it can be reasonably interpreted in the manner contended for by the plaintiff, namely, that the jury could award only damages which were reasonably certain to result from the injury, and that the possibility of decreased earning capacity was one factor to be considered.

The defendant also objected to the giving of instruction No. 30 on the ground that "the plaintiff has failed to prove with the certainty required by the law * * * the extent of any permanent or future diminution of earning capacity he may have" suffered as a result of the accident.

There is evidence in the record that as a result of the accident Mr. Rexford's right leg was about one-half inch shorter than his left and his spine has a permanent compensating curve. The movement of his ankle is restricted and he may develop arthritis as a result. His wrist is loose, but there is a possibility of repair. Due to these injuries it is reasonable to conclude, and a medical expert, Dr. Schaible, so testified, that Mr. Rexford will not be able to resume his previous job, since that would involve walking on narrow beams at some height, and his ankle would not permit this with safety. After the accident and up to the time of the trial Mr. Rexford had earned only $44 which he received for work on a contractor-union negotiation committee. He also worked from two to fourteen hours a day for three to four months developing a retirement plan for his union. Dr. Schaible made an "educated guess" that with two to three months of a rehabilitation program, Mr. Rexford could try working in the spring.

Mr. Rexford's medical expenses were at least $3,700. Lost wages were apparently about $19,000. Mr. Rexford earned $4.75 per hour, working a fifty-four hour week and getting time and a half for work over forty hours. There is no attempt to show how much Mr. Rexford will be able to earn in the future, except that he cannot work as a steamfitter, as pointed out above.

Although the defendant understandably objects to a $70,000 verdict against him when no showing has been made as to exactly what Rexford's earning capacity will be, the important thing is that he can no longer work at his chosen trade, that of a steamfitter. That being the case, what he can earn at another job is of no consequence as indicated in the decisions cited in the margin,[14] for his *earning capacity as a steamfitter* has been completely destroyed.

---

9. Cordiner v. Los Angeles Traction Co., 5 Cal.App. 400, 91 P. 436 (1907).

10. 91 Cal.App.2d 4, 204 P.2d 120 (1949).

11. Id. 204 P.2d at 125. Harper and James indicate that there is an "increasing liberality in allowing reasonable inferences to be drawn where the proof falls short of literal 'certainty.'" (2 Harper and James, Torts § 25.3 at 1306 (1956).)

On the other hand, Restatement, Torts § 912 (1939), comment (e), does not mention possibility at all, speaking only in terms of *probabilities*.

12. 42 Cal.App.2d 144, 108 P.2d 989 (1940).

13. Id. 108 P.2d at 1000.

14. United States v. Jacobs, 308 F.2d 906 (5th Cir. 1962); Chicago Union Traction

From the foregoing evidence adduced at the trial there can be no doubt that the plaintiff suffered permanent and disabling injuries. The impairment of his capacity to earn money as a steamfitter was shown with sufficient certainty to justify the trial court in submitting the issue to the jury. We find that there was no prejudicial error committed in the wording of instruction No. 30 or in its submission to the jury.

The final question for our decision is whether the trial court erred in including in its instruction No. 14 the language of an Alaska rule of the road relating to overtaking and passing of motor vehicles proceeding in the same direction, where under the facts of this case the two vehicles involved were facing in opposite directions. Reversible error is claimed by the defendant.

The rule of the road referred to is contained in the Alaska Administrative Code [15] and is quoted and made the last paragraph of instruction No. 14 as follows:

(3) The driver of a vehicle may overtake and pass another vehicle upon the right under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main-traveled portion of the roadway.

In the case at bar the defendant did not "overtake and pass" the Brann pickup truck in the sense that those words are ordinarily used in discussions of traffic or traffic laws and regulations. The word "overtaking" ordinarily refers to traffic *moving* in the same direction and pointed the same way on the road. Here the Brann vehicle was pointed in a direction opposite to that of Saslow's vehicle and not moving at all. The third paragraph of instruction No. 14 was inapplicable to any of the facts of this case and should not have been given. On its face it seems to cast fault upon the defendant Saslow merely because he violated the law by driving around the right side of the Brann pickup. It could have confused the jury and clouded the true issues they were required to decide in this case.

The judgment is reversed and the case remanded for a new trial.[16]

Co. v. Chugren, 209 Ill. 429, 70 N.E. 573 (1904); Bochar v. J. B. Martin Motors, 374 Pa. 240, 97 A.2d 813 (1953), holding that a $12,000 verdict was not excessive where a thirty-one year old male could not return to his job, this in spite of the fact that he was now earning more elsewhere.

15. 13 Alaska Adm.Code ch. 1, subch. 6, art. 1, § 91(b) (1961).

16. Inasmuch as a new trial is required in this case, we need not decide the plaintiff's cross appeal from the order reducing the amount of attorney's fees awarded him in the judgment.