Argued at Pendleton May 6; reversed June 9, 1931

# STATE *v.* WINFREE
(299 P. 1005)

*N. G. Wallace,* of Bend (A. J. Moore, of Bend, on the brief), for appellant.

*Ross Farnham,* District Attorney, of Bend, for the State.

CAMPBELL, J. On November 14, 1930, the defendant was indicted by the grand jury of Deschutes county for the crime of rape. The charging part of the indictment reads as follows:

"The said Jeff Winfree on the twentieth day of July, A. D. 1930, in the said county of Deschutes and the state of Oregon, then and there being, did then and there carnally know Ruby Winfree, a female child under the age of sixteen years, the daughter of said Jeff Winfree, contrary, etc."

On this indictment he was tried and convicted and sentenced to the penitentiary for twenty years. Defendant appeals.

The defendant and his wife, the parents of Ruby Winfree, the prosecutrix, had not been living together for about five years previous to the time of the alleged crime. At the time of the separation the mother moved to the state of Texas, taking the daughter, Ruby, with her, where they lived until September, 1929, when they returned to the state of Oregon. On their return to Oregon they lived with a married sister of Ruby at Sweet Home in Linn county. Ruby's brother, Newt, remained with his father in Deschutes county, Oregon, where the father was employed as a United States rural mail carrier. On June 29, 1930, after some correspondence with a Lucille Montgomery, a social worker connected with the Red Cross of Linn county, Ruby was turned over to her father who took her to live with his mother, Ruby's grandmother, at Bend, Oregon, where she remained until the month of September of the same year. The defendant owned a farm in Crook county adjoining the line of Deschutes county, the residence on said farm being one-half mile from the county line. The testimony of the prosecutrix is that on the evening that the alleged crime was committed she and the defendant left the residence on defendant's farm and drove towards Bend. After about five minutes on the road, the truck in which they were riding was turned off on a side road and stopped. This is the place where she claims the offense was committed. There is also the testimony of Newt Winfree that the road leading from the residence on the farm towards Bend crosses the county line into Deschutes county, one-half mile from the residence.

The bill of exceptions shows six assignments of error.

██ ██ This assignment of error is predicated on certain assertions made by the district attorney in his

opening statement and the testimony submitted to prove these assertions. The learned district attorney made a very fair and comprehensive opening statement not subject to adverse criticism regarding the crime itself and the relation of the parties, the place of their abode, the circumstances of their life, and the details of how Ruby came into the custody of the defendant. His statement up to this point was unobjectionable. However, in the course of his remarks, he made the following statement:

"The agreement made between the Red Cross secretary and Mr. Winfree was that Ruby was to come over to Bend and live with his mother who was there with him. He was to bring Ruby over to Bend and she was to reside with his mother and he was to support her. It was definitely understood that Ruby was not to go out to the ranch at Hampton Buttes at all unless the grandmother accompanied her. That she was to be in the grandmother's charge while up here in Bend and her father would support her."

The testimony of Miss Montgomery and of the prosecutrix was admitted over objection in support of said statement. This was introducing an unnecessary and prejudicial element against the defendant. No explanation was made as to how or why the secretary of the Red Cross had any jurisdiction to, or did, impose terms on the father of the child regarding her custody. This inhibition, so imposed without explanation, could have but one effect on the minds of the jurors and that is that at the time Ruby was turned over to defendant his reputation for morality was bad. The Red Cross secretary imposed no restriction as to any other company Ruby might associate with. This amounted to a covert attack on defendant's character. What the law will not permit to be done directly, it will not tolerate by indirection. Were this a civil case for breach of

contract, it might be material to show what the contract was. In the instant case, the only question for the determination of the court and jury was, Did the defendant commit the act charged in the indictment? That part of the opening statement above quoted, regarding the restriction of Ruby's going to the farm unaccompanied by her grandmother, together with the evidence admitted to support the same, was prejudicial error.

██ █ This assignment of error is predicated on the ruling of the court in permitting Dr. Woodworth, a witness for the state, to answer over objection the following questions:

Q. "Well now, doctor, what was the purpose of the visit of Ruby Winfree to your office in Albany on September 9 of this year?"

A. "To determine at the request of Miss Montgomery whether or not Miss Winfree was pregnant."

Q. "What was the purpose of the examination?"

A. "The examination was to determine whether she was or was not pregnant."

Dr. Woodworth was the county health officer of Linn county. The prosecutrix was taken to the doctor by Lucille Montgomery for the purpose of having him make a physical and medical examination for a certain purpose. These questions and answers were therefore proper and unobjectionable. The questions were simply to ascertain at whose request and for what purpose the doctor had made the examination, to the result of which he was about to testify. These were matters that the court and jury had a right to know.

█ When the state rested its case in chief, defendant moved for a directed verdict on the grounds: (1) That the venue of the alleged crime had not been proved;

(2) that the indictment does not state facts sufficient to constitute a crime; (3) or that if it does, then it states two crimes, rape and incest.

■ The evidence shows that the crime was committed, if at all, either in Deschutes county or within one mile of the boundary thereof: Oregon Code 1930, § 13-306; *State v. Lehman,* 130 Or. 132 (279 P. 283).

Rape is defined:

"If any person over the age of sixteen years shall carnally know any female child under the age of sixteen years * * * shall be punished * * *": Oregon Code 1930, § 14-220.

"A person convicted of rape upon his sister of the whole or half blood, or upon his daughter or the daughter of his wife, shall be punished * * *": Oregon Code 1930, § 14-221.

Incest is defined as:

"If any persons, being within the degree of consanguinity within which marriages are prohibited by law, shall intermarry with each other, or shall commit adultery or fornication with each other, such person or either of them shall be punished * * *": Oregon Code 1930, § 14-733.

■ A female under sixteen years of age is incapable of consenting to an act of carnal knowledge. Incest is the voluntary act of carnal knowledge with the consent of both.

■■ The only words of the statute left out of the indictment of the instant case is the age of the defendant. "An indictment for rape need not allege that defendant was over the age of sixteen years": *State v. Knighten,* 39 Or. 63 (64 P. 866, 87 Am St. Rep. 647); *State v. Edy,* 117 Or. 430 (244 P. 538). The indictment states but one crime and that correctly.

■■ ■ This assignment of error is predicated on
the following questions asked of Mrs. Warner, a witness
for defendant:

Q. "He came between you and your husband, didn't
he?"
A. "No."

Mrs. Warner had already testified that she was
part of the time in the employ of the defendant, and
that she had no bias or prejudice towards or against
him. After questioning her to some extent as to her
acquaintance with the defendant, the district attorney
on cross-examination asked the above question. It was
an attempt on his part to discover any bias or prejudice
on the part of the witness towards the defendant, and
great latitude is allowed to the cross-examiner for this
purpose. While the form of the question may be some-
what objectionable, it is not prejudicial error.

■■■■ ■ This assignment of error is predicated
upon certain questions in the nature of impeachment
that were asked of the witness, Jennie Winfree, who was
called on the part of defendant. The prosecutrix testi-
fied that she and the defendant left the farm on Sunday
evening, July 20, 1930, there being no one else with
them, and the offense was committed on that evening
and on their way to Bend. The defendant contended
that on that particular evening he left alone and that
Ruby remained out at the ranch until the following
Friday. It was admitted by both the state and the
defense that there was but one occasion that Ruby
stayed at the ranch for a week. The defendant claimed
that it was the week beginning July 20. The state
claimed that it was a week about the middle of the
month of August. The witness, Jennie Winfree, testi-
fied that during the week Ruby stayed out at the

ranch she called on the district attorney for the purpose of having the court matron get possession of Ruby, for her. She also testified that it was the week beginning July 20, that Ruby stayed out at the farm. On cross-examination she was asked:

Q. "I thought it was during the time Ruby was out there that you went to Mrs. King to have her get out papers on Ruby?"

A. "I went to Mrs. King to see if I couldn't work some way to get possession of that child; I certainly did."

Q. "Now you did that during the time that Ruby was out on the ranch?"

A. "Yes; Ruby was out on the ranch."

Q. "And she was only out there on the ranch once for a week, wasn't she?"

A. "Yes, just once for a week."

&ast; &ast; &ast; &ast; &ast;

Q. "And the reason that you advanced at the time was, wasn't it, that the arrangement under which Ruby came up here from Albany was that she was to live with you and that you were to have full charge of her; and she wasn't to go out to the ranch at all unless you accompanied her, and that Jeff had taken her out to the ranch without taking you; that she had been out there nearly a week and that you were worried about it and felt that the surroundings out there at the ranch were such that it was no place for Ruby and you wanted Mrs. King to get papers out on Ruby unbeknown to Jeff because you were afraid of Jeff, and have the court put Ruby in your charge so that you could say to Jeff, 'She can't go out there any more unless I go with her.' Now wasn't that —''

A. "No; there wasn't a word of that said."

&ast; &ast; &ast; &ast; &ast;

Q. "And wasn't another reason that you advanced at that time for getting possession of Ruby that Jeff— didn't you tell me in the presence of Mrs. King that

Jeff was arranging to get a fifteen-year old Sill girl to come back here and keep house for him together with Ruby?"

A. "No; I never said that."

Q. "And didn't you say that you felt the relationship between Jeff and this fifteen-old girl was such that you didn't want Ruby in those surroundings?"

A. "No."

*      *      *      *      *

Q. "Didn't you come to my office with Mrs. King in about the middle of August of this year."

A. "I told you I remember no dates."

Q. "No dates—but just wait until I ask you the question. Do you recall coming to the office of the district attorney of this county in company with Mrs. King of the Women's Protective Division somewhere about the middle of August of this year?"

A. "Well, I know I went with Mrs. King upstairs somewheres."

Q. "Did you not at that time and place, in the presence of Mrs. King and myself, make the statement that when Ruby came up here from Albany the agreement was that she was to stay with you all the time and wasn't to go out to Jeff's ranch unless you accompanied her?"

A. "No; I never said that at all. I said I had possession of her so she couldn't go without me, but it proved out different."

In rebuttal Mrs. King, in whose presence the foundation for the impeaching questions was laid and over objection, was asked, and answered the same questions in the affirmative. The statements contained in these impeaching questions are purely collateral, were elicited entirely on cross-examination, were not made in the presence of the defendant, and were not matters upon which the witness could have been impeached. The reasons given by the witness why she wanted to get

possession of the prosecutrix should not have been injected into the case. Its admission was prejudicial. It was proper to ask the witness as to the time she visited the district attorney's office, as tending to show that she was mistaken in her testimony regarding the time Ruby stayed out at the farm for a week.

"When a witness is cross-examined on * * * any matters collateral to the issue, his answers are conclusive and he can not be subsequently contradicted on those matters by the party seeking to impeach him. 'The test of whether or not a fact inquired of in cross-examination is collateral is this, Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?' '': 1 Wharton's Crim. Ev., 10th Ed., § 484, p. 1001.

The text is well supported by ample authorities.

It follows that the case is reversed and remanded.

ROSSMAN and KELLY, JJ., absent.