Argued March 2, reversed and remanded March 16, 1960

HOUSER ET AL *v.* HEIDER ET AL
350 P. 2d 422

*John E. Walker*, Portland, argued the cause for appellants. On the briefs was William E. Dougherty, Portland.

*Otto R. Skopil, Jr.*, argued the cause for respondents. On the brief were Williams & Skopil, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY and HARRIS, Justices.

HARRIS, J. (Pro Tempore)

This is an action for damages in the nature of trespass to real property, brought by the plaintiffs, Elizabeth C. Houser and Doris H. Brown, against the defendants, Otto Heider, Wallace Heider and Callie B. Heider.

Elizabeth C. Houser is the wife of Sam Houser, and Doris H. Brown is his sister. Otto Heider and Callie B. Heider are husband and wife and are the parents of Wallace Heider.

The jury returned a verdict against all the defendants for $23,800 general damages and $35,000 punitive damages. From the ensuing judgment, the defendants appeal.

The defendants were jointly charged in the complaint with willful, wanton and malicious entry upon plaintiff's real property and with ejecting and ousting plaintiffs therefrom and keeping and maintaining possession thereof for more than a year, despite repeated demands that plaintiffs be restored to possession and enjoyment of their property. In a portion of the real property involved Sam Houser maintained a garage business. In other portions of the property each plaintiff maintained a separate business of her own.

The evidence indicated that on August 11, 1955, prior to the entry of defendants upon plaintiff's property, the plaintiffs, in consideration of $6,000, executed a second mortgage on the property in question to Callie B. Heider. It was under the alleged rights claimed to be covered by this mortgage, in addition to

the alleged authorization of Sam Houser, that defendants sought to justify their entry upon and their retention of possession of plaintiffs' property.

The evidence discloses that defendants Otto Heider and Wallace Heider entered and took possession of the real property involved on August 23, 1955, prior to the time that the first payment was due on the second mortgage executed in favor of Callie B. Heider. Prior to the execution of this second mortgage in favor of Callie B. Heider, the plaintiffs had placed a first mortgage on the premises involved in favor of a bank. This first mortgage at the time of the execution of the second mortgage was in arrears for four monthly payments. Such default was also in effect when the defendants Otto Heider and Wallace Heider entered and took possession of the premises on August 23, 1955. The arrearage was paid by the plaintiffs on August 27, 1955.

Defendants' assignments of error, ten in number, complain principally of the rulings of the court in the giving of certain instructions, in connection with the admissibility of evidence and of other rulings of the court which denied their motions for mistrial.

Defendants' assignment of error No. 1 reads as follows:

"The Court erred in instructing the jury to disregard paragraph III of the affirmative defense, as follows:

" 'Defendants further allege in Paragraph III of their affirmative defense, Callie Heider was a mortgagee of the premises in peaceable possession thereof after peaceable entry while obligations due on said mortgage from plaintiffs remained unpaid. As to this claim, I instruct you I have withdrawn same from the pleadings and from the case, and you will dis-

miss it entirely from your consideration as though it was not included therein. Should you have occasion to refer to the defendants' Answer and defense, you will note that I have written the word "out" along side paragraph III so as to call to your attention that I have eliminated it from the case.'

"The objection made, and exception allowed, were as follows:

" 'MR. DOUGHERTY: Except to removal of paragraph III to affirmative answer.

" 'THE COURT: Exception allowed.' "

It will be noted that paragraph 3 of defendants' affirmative defense, the removal of which from the consideration of the jury is complained of as error under this assignment, sets forth defendants' contention that defendant Callie B. Heider was a mortgagee in possession of the premises, under which assertion defendants claim their possession was lawful. It will be observed that defendants allege that such possession was obtained "while the obligation due on said mortgage from plaintiffs remained unpaid." This allegation is a recognition on the part of the defendants that to become a mortgagee in possession there first must have been condition of the mortgage broken by the mortgagor. *Caro v. Wollenberg,* 68 Or 420, 428, 136 P 866, and cases therein cited.

Moreover, the record indicates the only condition of the mortgage which defendants claim was broken was one to the effect that payments on the first mortgages to the bank would be kept up. The instant Heider mortgage provides that:

"The above property is subject to a $13,097 mortgage to the U. S. National Bank, being a first

> mortgage, with payments of $290.00 per month, and payments are all up to date; and also subject to a $2597.00 mortgage in favor of the United States National Bank, payable $74.58, and payments are all up to date, and failure to make said monthly installments as and when due on said first mortgages matures this mortgage without any notice or demand and payments made by the mortgagee herein, on the first two mortgages, shall be added to and become a part of this mortgage and bear interest at the same rate as this mortgage together with any taxes that the mortgagee may advance, from time to time."

In other words, failure to maintain the payments on the prior first mortgages accelerates and matures the instant junior mortgage.

■ However, as is apparent from our statement of the facts, the default in the monthly payments on the first mortgage upon which defendants rely to prove condition broken was already in existence at the time of the giving and execution of the second mortgage. Therefore, such existing default may not be relied upon to accelerate the maturity of the Heider mortgage in the absence of an express provision in the mortgage that the failure to cure such default shall be ground for acceleration. Consequently, on August 23, 1955, when Otto and Wallace Heider took possession of the instant premises, there was no condition broken in relation to the Heider mortgage.

> "A default existing at the time the mortgage is given may not be relied on to accelerate the maturity of the debt secured unless the mortgage provides that the failure to cure such default shall be ground for acceleration." 59 CJS 787, Mortgages § 495(a).

The Nebraska court in *People's State Bank v.*

*Smith,* 120 Neb 29, 32, 231 NW 141, 143, has ruled as follows:

"The petition shows, and the evidence more clearly establishes, that the causes claimed for accelerating maturity of the debt existed at the time the new notes and mortgage were taken.  *  *  * In view of the prior business relations of the parties and the circumstances, the intention of the parties must be construed to be that the causes for accelerating maturity must arise subsequent to the execution of the papers. If any doubt would exist as to this, the doubt must be resolved in favor of the defendant. The papers were prepared by the plaintiff; the defendant had no choice in the language used."

Assignment of error No. 1 is without merit.

Assignment of error No. 2 is stated thus:

"The Court erred in giving the following instruction on compensatory damages:

" 'To recover actual or compensatory damages, plaintiffs are required to prove the same as any other issue of fact in this case by a preponderance of satisfactory evidence, and *in this sort of a case plaintiffs are entitled to be placed in the same position financially as they would have been if trespass had not been committed.* Compensatory damages cannot be allowed unless the trespass causes actual injury. Such damages may be awarded as compensation for an injury actually received by the plaintiffs from the defendants, and they must be the natural and proximate consequences of the acts complained of, and, hence, remote, speculative or conjecture damages cannot and should not be allowed.' (Italics ours.)

"The objection made thereto, and the exception allowed, are as follows:

" 'MR. DOUGHERTY: Court said—in-

structed the jury with reference to the measure of damages that the plaintiffs, if damages were allowed, were entitled to be placed in the same position financially as they would have been had trespass, if any, not occurred.

" 'THE COURT: Exception allowed.

" 'MR. DOUGHERTY: May I explain further?

" 'THE COURT: If you so desire.

" 'MR. DOUGHERTY: In this case, there was some evidence showing separate and several claims on the part of the two plaintiffs—one for loss of income from the Greyhound agency and the other from loss of income for a logging operation—since those are separate and several claims and in which two plaintiffs together would have no joint right, damages could not be allowed, then, jointly as plaintiffs in this law suit.

" 'THE COURT: I already allowed your exception.' "

■ We do not believe that the instructions of the court, considered as a whole, authorized the jury to make an allowance for any damages to the separate businesses which the two plaintiffs conducted on the premises. However, since this case must be retried because of error which becomes manifest later in this opinion, the court should make it clear to the jury upon retrial that the plaintiffs can recover only for such damage as is common to their interests in the property as tenants in common. Again, we point out that the defendants requested no instructions whatsoever upon the measure of damages nor upon any other phase of this case.

Assignment of error No. 3 is as follows:

"The Court erred on examination of defendants'

witness Otto Heider in sustaining an objection to a question as follows:

"'Q Then, you had loaned Mr. Houser or Houser Chevrolet Company any monies prior to this time—prior to April, 1954?

"'THE COURT: Just a moment—

"'MR. SKOPIL: I still don't see the relevancy as to the making of loans between Sam Houser and Mr. Heider—prior loans.

"'THE COURT: That apparently was terminated in the bill of sale and conditional sales contract—the prior had emerged in that.

"'MR. DOUGHERTY: I don't know the facts.

"'THE COURT: In any event, there will be some collateral matter that would not effect the particular issues in this case.

"'MR. DOUGHERTY: I object. I would like latitude.

"'THE COURT: Going to the default?

"'MR. DOUGHERTY: Yes, and on the course of dealings—

"'THE COURT: That is with Sam Houser?

"'MR. DOUGHERTY: Who is the husband of one of the plaintiffs.

"'THE COURT: I understand that.

"'MR. DOUGHERTY: By whom plaintiffs were employed.

"'THE COURT: I will give you as much latitude as I believe sufficient, but there are limits to that latitude, and that is going a little too far.

"'MR. DOUGHERTY: In view of the extreme latitude allowed plaintiffs in going back over many years dealings with the parties, may

I have a particular exception to the Court's ruling.

"'THE COURT: You may have an exception.'"

■ Since the defendants made no offer of proof in connection with the ruling complained of, this assignment brings nothing to the attention of this court for review.

Assignment of error No. 4 reads as follows:

"The Court erred in denying defendants' motion for mistrial as follows:

"'MR. DOUGHERTY: * * * At this time, I should like to renew my motion—repeated motions—for mistrial. This motion is made upon the following grounds.

"'First: A considerable body of testimony has been admitted or has been referred to without being admitted concerning other law suits between the same parties. All of the testimony in those other law suits, if not an admission against interest, is hearsay in this case. The admission of substantially all of the testimony in this case is prejudicial error of the worst conceivable type.

"'Furthermore, counsel has in effect testified. He has made statements of fact concerning acts outside this courtroom concerning hearsay which cannot help but have an influence upon the jury. The bell so rung cannot be unrung.

"'It seems to me that the status of the evidence in this case is not only so confusing, but so prejudicial that the defendants cannot possibly have a fair trial. So I would like to reiterate my motion.'"

The motion for mistrial which is the basis of this assignment of error purports to renew "repeated mo-

tions for mistrial." The record fails to disclose such prior motions. The motion under consideration was made after a motion for nonsuit had been denied and long after the rulings complained of had been made. Assuming it was timely, the motion complains principally of rulings which allegedly erroneously admitted certain evidence. Since this evidence was eventually rejected by the trial court, and the questions raised in relation thereto will probably not occur upon retrial, it is not necessary for us to further consider this assignment of error.

Assignment of error No. 5 is stated as follows:

"The Court erred in overruling defendants' demurrer to the alleged first affirmative reply of plaintiffs.

"Points and Authorities

"1. The purported plea of former judgment was not pleaded with particularity (especially as to the element of time), and was accordingly insufficient. "Winston Bros. v. Galloway, 168 Or 109, 113."

Since the plea of "former judgment" mentioned in this assignment was removed from the jury's consideration and from the pleadings, this matter need not be considered further.

Assignment of error No. 6 reads as follows:

"The Court erred in overruling defendants' demurrer to the alleged second affirmative reply of plaintiffs."

The matters contained in this assignment of error were also removed from the consideration of the jury and need not be considered.

Assignment of error No. 7 reads as follows:

"The Court erred on examination of plaintiffs'

witness, defendant Callie B. Heider, in overruling an objection to a question as follows:

" 'Q And apparently there are considerable number of mortgages in which you appear to be the mortgagor (mortgagee)—to you personally aren't there?

" 'MR. DOUGHERTY: Objected to, your Honor.

" 'THE COURT: Objection overruled.' "

■ It will be noted that counsel for defendants stated no ground whatsoever for the objection mentioned in this assignment of error, nor was any request made to limit the answer to certain purposes. We believe the evidence challenged under this assignment of error was relevant upon the issue of the alleged agency between Callie B. Heider, who was not present when the alleged unlawful entry was made, and Otto Heider.

Assignments of error Nos. 8, 9 and 10 all relate to the same subject matter and will be considered together. These assignments read as follows:

"The Court erred in denying defendants' motion for a mistrial as follows:

" 'MR. DOUGHERTY: * * * I should like to renew my motion for a mistrial, and in that connection, I should like the reporter to read the question—questions and answers directed to Mr. Heider by Mr. Skopil regarding the Honorable Judge Hammond and the Sheriff of this County.

" 'THE COURT: That will be unnecessary. Motion will be denied and exception allowed.

" 'MR. DOUGHERTY: May I be heard in argument. I feel very strongly on the matter.

" 'THE COURT: I fail to see any reason for it, * * *.' "

## "ASSIGNMENT OF ERROR NO. 9

"The Court erred on examination of plaintiffs' witness Jones in overruling an objection to a question as follows:

"'THE COURT: Mr. Skopil, you will be limited to a certain question and answer that you presented to Mr. Otto Heider.

"'MR. SKOPIL: All right.

"'Q Mr. Jones, yesterday when Mr. Heider was on the witness stand a question was asked of him whether or not he ever made a statement to you as Sheriff that our office, Williams & Skopil, had bribed Judge Hammond and that was the reason Mr. Houser was not in the State Penitentiary. Was that statement made or was it not made to you?

"'MR. DOUGHERTY: Objection.

"'THE COURT: Objection overruled.'"

## "ASSIGNMENT OF ERROR NO. 10

"The Court erred in denying defendants' motion for a mistrial as follows:

"(MR. SKOPIL in argument to the jury:)

"'But that isn't where he (Otto Heider) stopped. No. He goes down and tells Sheriff Jones—down here—that the only reason Mr. Houser isn't in the State Penitentiary is because we—I say we I mean me and my partner, Mr. Williams—bribed the Judge.

"'Well, now that reflects on me a little bit, and I resent it wholeheartedly. At times I get a little bit too rambunctious over the situation, but this thing strikes pretty close to home when people start accusing, and put yourself in the same situation, and when people start accusing you of bribing—even if it were possible and it isn't—a Judge is there malice? Is there ill will? Well, I think there is. Thank you.

" 'THE COURT: We will take a recess.

" 'MR. DOUGHERTY: If the Court please, I should like to re-new my motion of mistrial based on the testimony of Mr. Jones, being furthermore based on the highly inflammatory personal comments made by counsel to the jury on his own behalf when he was speaking about punitive damages for the plaintiffs. Injecting personality into jury argument in such a highly prejudicial matter is, I believe, a very gross conduct and error.

" 'THE COURT: Counsel, of course, has a right to comment upon any evidence that is properly in the case. * * *.' "

On direct examination inquiry was made of defendant Otto Heider, relative to the conversation he had on August 20 or 21, 1955, with Sam Houser in which it was claimed Mr. Houser told Mr. Heider to take the property over. Mr. Heider then gave his testimony concerning the conversation, such testimony in part being as follows:

"He said I come in to tell you I am all through, and I cannot go any further. I said, well, don't you want to try, and he said it is no use. We went over a list of contracts with him that I knew he had re-sold the cars, and he held contracts but had no certificates of title. There were about, oh, I would say a dozen of those, and I mentioned the bank had been checking with me, and I told him what the bank told me. He said, 'I am through. You just as well take the place over. Everything— practically everything—on the premises belongs to you. Inventory, equipment, and everything is there, and he offered me the keys.' I didn't take them, but he says, 'I think I will have to serve some time for this.' "

Later, on cross-examination, counsel for plaintiffs inquired as follows:

"Q   Mr. Heider, did Mr. Houser serve any time?
"A   Yes, he did.

"Q   Here in the County jail of Yamhill County?
"A   Well, I think it was in the County Jail.  I think it was.

"Q   Was that the time you told Sheriff Jones that our firm had bribed Judge Hammond to keep him from going to the State Penn?
"A   I never.

"Q   You never told Sheriff Jones that?
"A   I never told anybody that at any time or at any place."

Later plaintiffs produced Sheriff Jones, and the court permitted him to testify with reference to Mr. Heider's alleged statement as follows:

"Q   Mr. Jones, yesterday when Mr. Heider was on the witness stand a question was asked of him whether or not he ever made a statement to you as Sheriff that our office, Williams & Skopil, had bribed Judge Hammond and that was the reason Mr. Houser was not in the State Penitentiary.  Was that statement made or was it not made to you?

"MR. DOUGHERTY:  Objection.

"THE COURT:  Objection overruled.

"THE COURT:  Was that statement made?
"A   Yes."

Subsequently, in final argument counsel for plaintiffs was permitted to address the jury as follows:

"But that isn't where he [Otto Heider] stopped. No.  He goes down and tells Sheriff Jones—down here—that the only reason Mr. Houser isn't in the State Penitentiary is because we—I say we I mean me and my partner, Mr. Williams—bribed the Judge.

"Well, now, that reflects on me a little bit, and I resent it wholeheartedly. At times I get a little bit too rambunctious over the situation, but this thing strikes pretty close to home when people start accusing, and put yourself in the same situation, and when people start accusing you of bribing— even if it were possible and it isn't—a Judge is there malice? Is there ill will? Well, I think there is. Thank you."

■ We hold it was entirely improper for counsel for the plaintiffs to interject in cross-examination an entirely collateral, irrelevant and immaterial matter, highly inflammatory in nature, which in effect was an accusation claimed to have been made by the defendant Otto Heider accusing plaintiffs' counsel of the crime of bribery. The principal and main accusation was directed toward plaintiffs' counsel rather than toward Sam Houser.

This alleged statement was entirely unrelated to defendant Heider's direct examination. Neither was it related to any issue involved in the case, but to a wholly collateral matter.

■ Moreover, since the witness Heider denied making the accusatory statement upon this collateral matter, such denial necessarily bound the party cross-examining him. Thus the resulting prejudice was compounded by allowing Sheriff Jones to contradict the witness upon this subject, and still further intensified by allowing counsel for the plaintiff to argue the matter before the jury and thus exonerate himself from the prejudicial and inflammatory charge against him and his law partner. In *State v. Elliott,* 206 Or 82, 97, 289 P2d 1075, Mr. Justice LUSK, speaking for the court, said:

"There was no reversible error in the ruling. The question did not relate to the witness' direct

examination, nor to the issue of defendant's guilt or innocence, but to a wholly collateral matter. Had the witness denied that she had falsified in the particular suggested by the question, the defendant would not have been permitted to contradict her.

" '* * * It is a general principle that a witness cannot be cross examined as to collateral or irrelevant matters, merely for the purpose of contradicting him by other evidence, if he should deny it, in order thereby to discredit his testimony; and where a witness is interrogated for the purpose of impeachment as to a matter not relevant to the issue and not touched on in direct examination, his answer is, as a general rule, binding on the party cross-examining him.' Peters v. Consolidated Freight Lines, 157 Or 605, 610, 73 P2d 713."

In *State v. Winfree,* 136 Or 531, 539-540, 299 P 1005, the court ruled as follows:

"In rebuttal Mrs. King, in whose presence the foundation for the impeaching questions was laid and over objection, was asked, and answered the same questions in the affirmative. The statements contained in these impeaching questions are purely collateral, were elicited entirely on cross-examination, were not made in the presence of the defendant, and were not matters upon which the witness could have been impeached. The reasons given by the witness why she wanted to get possession of the prosecutrix should not have been injected into the case. Its admission was prejudicial. It was proper to ask the witness as to the time she visited the district attorney's office, as tending to show that she was mistaken in her testimony regarding the time Ruby stayed out at the farm for a week.

"When a witness is cross-examined on * * * any matters collateral to the issue, his answers are conclusive and he can not be subsequently

> contradicted on those matters by the party seeking to impeach him. 'The test of whether or not a fact inquired of in cross-examination is collateral is this, Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?': 1 Wharton's Crim. Ev., 10th Ed., § 484, p. 1001."

■ Plaintiffs claim the testimony referred to was proper since it tended to show defendant Heider's bias and hostility. We believe that the statement under consideration attributed to defendant Heider would merely be an attempt to show a justification of his hostility rather than evidence tending to prove hostility on his part, and that it was, therefore, not competent under the following general rule:

> "In such cases, the proper scope for the exercise of discretion by the trial court is in limiting the cross examination to a disclosure of such facts only as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it." 28 RCL 612, § 201.

■ Moreover, the statement claimed to show hostility was principally and mainly directed against plaintiffs' attorneys and, perhaps incidentally, toward a witness but not a party to the case; to-wit, Sam Houser. The applicable rule in this situation is that it is competent on cross-examination of a witness to elicit facts which tend to show the hostility of the witness toward the party against whom he is called. See 58 Am Jur 386, 387, Witnesses §§ 715, 716. It will be noted that the attempt in this case was to show hostility on the part of the witness, not toward a party to the case but to-

ward counsel for plaintiffs and a witness for the plaintiffs. In their brief plaintiffs cite upon this subject the cases of *State v. Weston,* 102 Or 102, 133, 201 P 1083; and *State v. Ellsworth,* 30 Or 145, 47 P 199. It will be noted that in each of these cases the question involved was the hostility of the witness toward a party, and not toward a witness or toward a party's counsel.

■ We believe the interjection of the inflammatory matter discussed under these three assignments of error was prejudicial to the rights of the defendants to a fair and impartial trial upon the real issues involved in the case. The interjection of this collateral matter, we believe, would divert the jury from the real and proper issues in the case. Questions which relate to inflammatory or scandalous matter, entirely collateral to the issues involved and which are likely to affect a jury improperly, clearly have no proper place in a fair investigation of the issues.

Defendants' assignments of error 8, 9 and 10 are sustained; the judgment appealed from is reversed and the cause is remanded for new trial.